Bobby Joe MULLINAX *v.* STATE of Arkansas

CA CR 95-698                                         920 S.W.2d 503

Court of Appeals of Arkansas
Division I
Opinion delivered May 1, 1996
[Petition for rehearing denied May 29, 1996.]

*Doug Norwood*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant entered a conditional plea of guilty to driving while intoxicated pursuant to Rule 24.3(b) of the Arkansas Rules of Criminal Procedure. The appellant was fined $250.00, ordered to pay court costs of $403.00, and had his driver's license suspended for ninety days.. He was also ordered to complete an alcohol safety program and sentenced to one day in jail. On appeal, he argues that the trial court erred in denying his motion to suppress because the roadblock at which he was stopped was not implemented in a lawful manner. We disagree and affirm.

In reviewing a trial court's decision to deny an appellant's motion to suppress, this Court makes an independent determination based on the totality of the circumstances and will reverse the trial court's ruling only if it is clearly against the preponderance of the evidence. *Roark* v. *State*, 46 Ark. App. 49, 876 S.W.2d 596 (1994). We view the evidence in the light most favorable to the appellee. *Beshears* v. *State*, 320 Ark. 573, 898 S.W.2d 49 (1995).

The appellant was stopped at a roadblock on August 11, 1994, conducted by Springdale Police Officers Mike Bell and Mike Peters. Lieutenant John Lewis, supervisor and shift commander in charge at the time, authorized the roadblock, approved the site, and gave Officer Bell instructions on how to proceed. Lieutenant Lewis testified that he had previously participated in numerous roadblocks. He testified that he instructed the officers not to profile certain cars or certain people, and not to stop the cars at random. He testified

that the officers had a set procedure on how they were going to conduct the roadblock and that he confirmed the plan.

The roadblock was set up in a road construction area near a junior high school where traffic was restricted to two lanes and the speed limit was reduced to thirty miles an hour. There had been reports of reckless driving and speeding in that area. Officer Bell testified that there were barrels guiding the traffic through the particular area and that they adjusted the barrels and their vehicles to facilitate the traffic flow. He testified that drivers had to negotiate the barrels before they set up the roadblock and that their presence increased visibility to the area. The officers carried flashlights and wore bright orange reflective safety vests with the word "POLICE" on them in large letters. The blue lights and headlights were activated on the two police vehicles utilized in conducting the roadblock.

Officer Bell testified that the purpose of the roadblock was to check the sobriety of the drivers and to check for valid vehicle registration, driver's licenses, and insurance. He further stated that the purpose of the roadblock was discussed with Lieutenant Lewis. Every vehicle approaching the roadblock was stopped for a period of no more than thirty seconds, and every fifth vehicle was stopped for a more detailed check that lasted less than two minutes. Officer Bell testified that they explained to every vehicle what they were doing and asked every fifth driver for his driver's license, registration, and insurance. The officers called in the driver's license numbers, and the radio operator informed them if the licenses were valid and if there were any outstanding warrants. The radio dispatch logs indicated that the officers called in to check eighteen drivers' licenses during the roadblock, which lasted for approximately one hour.

Officer Bell testified that he noticed the odor of intoxicants coming from the appellant's vehicle and on the appellant's breath when he stopped at the roadblock. He further testified that he saw a plastic cup in the console of the vehicle containing some ice and liquid. He stated that the appellant's vehicle was not one of the fifth vehicles but that the appellant was detained for a further check because it appeared that he had been drinking.

The appellant makes some twenty objections to the conduct of the officers and the manner in which the roadblock was imple-

mented. We first address his arguments that the roadblock was unconstitutional under the Arkansas Constitution. The appellant contends that Article 2, Section 15, of the Arkansas Constitution provides greater protection against unreasonable searches and seizures than the Fourth Amendment to the United States Constitution. We dispose of this argument by noting that our Supreme Court declined to make such a finding in *Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995).

A Fourth Amendment "seizure" occurs when a vehicle is stopped at a checkpoint. *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444 (1990). The question thus becomes whether such seizures are reasonable under the Fourth Amendment. *Id.*

In *Camp v. State*, 26 Ark. App. 299, 764 S.W.2d 463 (1989), we found the roadblock that was established for the purpose of checking driver's licenses and vehicle registration was reasonable under the Fourth Amendment. The permissibility of vehicle stops made on less than reasonable suspicion of criminal activity must be judged in each case by balancing the effect of the intrusion on the individual's Fourth Amendment rights against the promotion of a legitimate government interest. *Camp, supra.* In *Sitz, supra,* the United States Supreme Court held that a state's use of sobriety checkpoints does not violate the Fourth and Fourteenth Amendments to the United States Constitution. The Supreme Court determined that the balancing analysis in *Brown v. Texas*, 443 U.S. 47 (1979), and *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976), provided the governing framework for ascertaining the reasonableness of a sobriety-checkpoint seizure. In *Brown*, the Supreme Court stated:

> Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.
>
> A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective

facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.

443 U.S. at 50-51 (citations omitted).

■ Some of the various factors that have been considered in applying the balancing analysis include: the supervision of the individual officers in the field, the limited discretion of the officers in stopping vehicles, the amount of interference with legitimate traffic, the subjective intrusion on the part of the travelers, the supervisory control over the operation, and the availability of a less intrusive means of promoting the legitimate government interest. *See Michigan Dept. of State Police v. Sitz, supra; Brown v. Texas, supra; Delaware v. Prouse,* 440 U.S. 648 (1979); *United States v. Martinez-Fuerte, supra;* and *United States v. Brignoni-Ponce,* 422 U.S. 873 (1975). *See generally,* Annotation, *Validity of Routine Roadblocks by State or Local Police for Purpose of Discovery of Vehicular or Driving Violations,* 37 A.L.R.4th 10 (1985 & Supp. 1995).

■ The appellant argues that many of the factors required for a checkpoint to pass constitutional muster were absent or deficient in the roadblock in the case at bar. He relies on cases from other jurisdictions that have found certain factors, such as written guidelines, a local or statewide policy or program, advance publicity, data on site selection, and supervision at the site, to be constitutional prerequisites to a valid checkpoint. However, we find those factors to be merely relevant matters to be considered by a court in the overall balancing process. *See e.g., People v. Banks,* 6 Cal. 4th 926, 863 P.2d 769, 25 Cal. Rptr. 524 (1993); *O'Kelley v. State,* 210 Ga. App. 686, 436 S.E.2d 760 (1993); *State v. Barker,* 252 Kan. 949, 850 P.2d 885 (1993); *People v. Cascarano,* 155 Misc. 2d 235, 587 N.Y.S.2d 529 (1992). Thus, we conclude, after the requisite balancing test, that the roadblock in the case at bar did not constitute an unreasonable seizure under the Fourth Amendment.

■ Here, the roadblock was established for the purpose of determining that licensed and safe drivers were using the public roadway. "No one can seriously dispute the magnitude of the drunken driving problem or the State's interest in eradicating it." *Sitz,* 496 U.S. at 451. In *Camp,* we noted the importance of qualified drivers and safe vehicles using the highways and that we

were not aware of a less intrusive means of making that determination. There is no evidence that the roadblock in the case at bar was established as a subterfuge for detection of any other criminal activity.

■ The roadblock was established at a construction area where the speed limit had been reduced and was conducted at a time when the traffic was light. The presence of the officers at the area did not create a traffic hazard or unduly interfere with legitimate traffic. The identity of the officers and the presence of their vehicles were obvious due to the identifying vests worn by the officers and the flashing blue lights. The motorists were only stopped briefly and this was a checkpoint stop rather than a roving patrol. Thus, the level of intrusion was slight. *See Sitz*, 496 at 452-453.

■ The officers did not make random stops using unbridled discretion but stopped vehicles based on an established procedure that was followed during the roadblock. The roadblock was authorized by the supervisor in charge at the time. Lieutenant Lewis stated that the roadblock was set up as a safety check point and not specifically for the detection of intoxicated drivers. Nevertheless, safety necessarily involves motorists who are not driving while intoxicated. The officers were veterans who were trained as part of the police program in handling driving violations. The data reveals that eighteen drivers' licenses were checked and one arrest was made. This percentage is sufficient to show the checkpoint's effectiveness. *See id.* at 455. Furthermore, after the appellant stopped and Officer Bell detected signs of intoxication, the officers had authority under Arkansas Rule of Criminal Procedure 3.1 to further detain the appellant.

■ Another of the appellant's arguments is that the officers illegally detained the drivers and their passengers in an effort to run warrant checks on them. However, the officers testified that the radio dispatcher automatically checked for outstanding warrants when they called in the driver's license numbers so it was not in fact a further detention in order to run warrant checks. Moreover, the rights secured by the Fourth Amendment are personal in nature, and the appellant does not have standing to challenge the seizure on the behalf of any passengers that may have been involved. *See Jones v. State*, 45 Ark. App. 28, 871 S.W.2d 403 (1994).

Thus, under these circumstances, we conclude that the roadblock was not conducted in a manner inconsistent with the appellant's Fourth Amendment rights or that the limited intrusion on those rights, to the extent that the intrusion advanced the public interest, outweighed the promotion of society's legitimate interest. Therefore, we find that the trial court did not err in denying the appellant's motion to suppress.

Affirmed.

PITTMAN and ROGERS, JJ., agree.