Bobby Joe MULLINAX *v.* STATE of Arkansas

CR 96-571 938 S.W.2d 801

Supreme Court of Arkansas
Opinion delivered January 21, 1997

*Doug Norwood*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Bobby Joe Mullinax was found guilty in Springdale Municipal Court of driving while intoxicated; he was fined $300.00, ordered to pay court costs of $335.25, sentenced to one day in jail, had his driver's license suspended for ninety days, and was ordered to complete an alcohol safety program at the Ozark Guidance Center. He appealed to Washington County Circuit Court and moved to suppress the evidence gathered against him on the basis that it was obtained at an unconstitutional roadblock. After conducting a hearing on Appellant's motion to suppress, the circuit court denied the motion; Appellant then entered a conditional plea of guilty, with the State's consent, in accordance with A.R.Cr.P. Rule 24.3(b). The circuit court entered a written amended judgment indicating that the entry of Appellant's plea of guilty was conditioned on his right to appeal the suppression issue and sentencing Appellant to pay the Springdale Municipal Court a fine of $250.00 and court costs of $335.25. The amended judgment also ordered Appellant to pay court costs of $67.75 to the Washington County Sheriff,

suspended his driving privileges for ninety days, ordered him to comply with the recommendation made by the Ozark Guidance Center, and sentenced him to one day in jail.

■ The Arkansas Court of Appeals heard Appellant's appeal of the suppression issue and affirmed the circuit court. *Mullinax v. State*, 53 Ark. App. 176, 920 S.W.2d 503 (1996). We granted Appellant's petition for review of that decision. When this court grants a petition for review following a decision by the court of appeals, we review the case as though the appeal was originally filed with this court. *Allen v. State*, 326 Ark. 541, 932 S.W.2d 764 (1996); *Armer v. State*, 326 Ark. 7, 929 S.W.2d 705 (1996). Upon such review, we find no error in the circuit court's denial of Appellant's motion to suppress and affirm the judgment.

■ On appeal, Appellant contends the roadblock was unconstitutional under the Fourth Amendment to the United States Constitution and Article 2, Section 15, of the Arkansas Constitution of 1874. The trial court ruled the roadblock was constitutional because there was no profiling of vehicles, rather every vehicle was stopped and every fifth vehicle was detained for a more detailed check not lasting more than two minutes. Upon review of a trial court's denial of a motion to suppress, we make an independent determination based upon the totality of the circumstances; we view the evidence in the light most favorable to the appellee, and we reverse the trial court's ruling only if it is clearly erroneous or against the preponderance of the evidence. *Norman v. State*, 326 Ark. 210, 931 S.W.2d 96 (1996).

For the sake of convenience, we recite the evidence as it was accurately reported by the court of appeals:

> The appellant was stopped at a roadblock on August 11, 1994, conducted by Springdale Police Officers Mike Bell and Mike Peters. Lieutenant John Lewis, supervisor and shift commander in charge at the time, authorized the roadblock, approved the site, and gave Officer Bell instructions on how to proceed. Lieutenant Lewis testified that he had previously participated in numerous roadblocks. He testified that he instructed the officers not to profile certain cars or certain people, and not to stop the cars at random. He testified that the officers had a set procedure

on how they were going to conduct the roadblock and that he confirmed the plan.

The roadblock was set up in a road construction area near a junior high school where traffic was restricted to two lanes and the speed limit was reduced to thirty miles an hour. There had been reports of reckless driving and speeding in that area. Officer Bell testified that there were barrels guiding the traffic through the particular area and that they adjusted the barrels and their vehicles to facilitate the traffic flow. He testified that drivers had to negotiate the barrels before they set up the roadblock and that their presence increased visibility to the area. The officers carried flashlights and wore bright orange reflective safety vests with the word "POLICE" on them in large letters. The blue lights and headlights were activated on the two police vehicles utilized in conducting the roadblock.

Officer Bell testified that the purpose of the roadblock was to check the sobriety of the drivers and to check for valid vehicle registration, driver's licenses, and insurance. He further stated that the purpose of the roadblock was discussed with Lieutenant Lewis. Every vehicle approaching the roadblock was stopped for a period of no more than thirty seconds, and every fifth vehicle was stopped for a more detailed check that lasted less than two minutes. Officer Bell testified that they explained to every vehicle what they were doing and asked every fifth driver for his driver's license, registration, and insurance. The officers called in the driver's license numbers and the radio operator informed them if the licenses were valid and if there were any outstanding warrants. The radio dispatch logs indicated that the officers called in to check eighteen drivers' licenses during the roadblock, which lasted for approximately one hour.

Officer Bell testified that he noticed the odor of intoxicants coming from the appellant's vehicle and on the appellant's breath when he stopped at the roadblock. He further testified that he saw a plastic cup in the console of the vehicle containing some ice and liquid. He stated that the appellant's vehicle was not one of the fifth vehicles but that the appellant was detained for a further check because it appeared that he had been drinking.

*Mullinax*, 53 Ark. App. at 178-79, 920 S.W.2d at 504-05.

■ It is well settled that a Fourth Amendment seizure occurs when a vehicle is stopped at a roadblock or checkpoint. *Michigan· Dep't of State Police v. Sitz*, 496 U.S. 444 (1990) (citing *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976)). According to *Sitz*, "[t]he question thus becomes whether such seizures are 'reasonable' under the Fourth Amendment." *Id.* at 450. It is also well-settled that the permissibility of vehicle stops made on less than reasonable suspicion of criminal activity is to be judged according to the three-pronged balancing tests of *Martinez-Fuerte*, 428 U.S. 543, and *Brown v. Texas*, 443 U.S. 47 (1979). *Sitz*, 496 U.S. at 450. The Supreme Court enunciated the test in *Brown* as follows: "Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Id.* at 50–51.

■ The three factors to be weighed in this case are the State's interest in preventing accidents caused by drunk drivers, the degree to which the State's seizure or roadblock advances its interest, and the level of intrusion on Appellant's individual privacy that is caused by the roadblock. First, there is no doubt as to the magnitude of the State's interest in eradicating drunk driving. *Sitz*, 496 U.S. at 451. Additionally, this court has previously indicated that the purposes of checking drivers' and vehicle licenses are permissible purposes for a roadblock, *Stobaugh v. State*, 298 Ark. 577, 769 S.W.2d 26 (1989), and the court of appeals has upheld the constitutionality of roadblocks held for the same purposes, *Camp v. State*, 26 Ark. App. 299, 764 S.W.2d 463 (1989). Second, the level of the intrusion on the motorist is slight. Each motorist was stopped for anywhere from thirty seconds to no more than two minutes. The blue lights of the police vehicles and the orange vests worn by the officers offered indicia of governmental authority and made the roadblock clearly visible. The roadblock was held in a well-traveled area near a junior high school. Therefore, there was no "fear and surprise" to law-abiding motorists. *Martinez-Fuerte*, 543 U.S. at 558. Third, the degree to which the roadblock advanced the state's interest is sufficient. The officers did not make random stops with unfettered

discretion, but held a fixed roadblock, in an area where travel was already limited to thirty miles per hour, that was authorized by the shift commander and followed the guidelines of stopping every car and then inquiring further of every fifth car as to the driver's license and registration. Of the eighteen drivers' licenses that were checked, one arrest was made. Although a searching examination of effectiveness is not required, this rate of effectiveness is sufficient. *See Sitz*, 496 U.S. at 454-55. Accordingly, we conclude that the roadblock was a reasonable seizure under the Fourth Amendment and that the trial court did not err in refusing to suppress the evidence obtained against Appellant at the roadblock.

Article 2, Section 15, of the Arkansas Constitution is virtually identical to the Fourth Amendment to the United States Constitution. We thus interpret Article 2, Section 15, in the same manner as the United States Supreme Court interprets the Fourth Amendment, *Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995). Therefore, under the foregoing analysis used to determine this seizure was reasonable under the Fourth Amendment, we also conclude that the seizure was reasonable under Article 2, Section 15, of the Arkansas Constitution.

Appellant offers some twenty reasons why he believes this roadblock was unconstitutional. We find that the majority of these reasons are merely factors to be considered in balancing the interests at stake rather than constitutional prerequisites to a valid roadblock. *See Sitz*, 496 U.S. 444; *Brown*, 443 U.S. 47; *Delaware v. Prouse*, 440 U.S. 648 (1979); and *Martinez-Fuerte*, 428 U.S. 543. Appellant describes these factors as the effectiveness of the roadblock, availability of a less intrusive means for conducting the roadblock, failure to keep records during the roadblock, no supervision and unlimited discretion of officers conducting the roadblock, insufficient safety precautions during the roadblock, site selection of the roadblock, lack of training of officers conducting the roadblock, and lack of advance publicity of the roadblock. There are a few of Appellant's reasons, however, that merit some discussion as follows.

Appellant contends that Article 2, Section 15, of the Arkansas Constitution requires a warrant to be issued prior to

conducting a roadblock. Since the United States Supreme Court held in *Martinez-Fuerte*, 428 U.S. 543, that a warrant was not required in advance for the operation of a fixed roadblock, and since we interpret the Arkansas Constitution similarly to the Fourth Amendment, we conclude that no warrant was required under Article 2, Section 15.

Appellant contends that the Fourth Amendment requires a statewide administrative or statutory plan for implementing roadblocks. Appellant relies on *Holt v. State*, 887 S.W.2d 16 (Tex. Crim. App. 1994), which held that, in light of *Sitz*, sobriety checkpoints are unconstitutional without express authorization and implementation by a statewide governing body. We do not find *Holt* to be persuasive, in part due to the reasons expressed in the dissenting opinion. *Holt*, 887 S.W.2d at 21 (Campbell, J., dissenting). Although *Sitz* did involve a comprehensive statewide program with guidelines for implementing sobriety checkpoints, we do not interpret the *Sitz* decision as holding that a statewide program is a prerequisite to instituting a constitutional roadblock. For other courts so concluding, see *Davis v. Kansas Dep't. of Revenue*, 252 Kan. 224, 843 P.2d 260 (1992), and cases cited therein at 252 Kan. at 229-30, 843 P.2d at 263.

Appellant also contends that the lack of a plan or program at the Springdale Police Department allowed the officers to impermissibly exercise discretion while implementing the roadblock. The Supreme Court stated in *Brown*:

> A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. *See Delaware v. Prouse*, 440 U.S. 648, 654-655 (1979); *United States v. Brignoni-Ponce, supra*, at 882. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, *or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers. Delaware v. Prouse, supra, at 663. See United States v. Martinez-Fuerte, 428 U.S. 543, 558-562 (1976).*

*Brown,* 443 U.S. at 51 (emphasis added). Based on the testimony in this case regarding the field officers' discussion of the particular procedures and location for this roadblock with their superior officer, we conclude there was a "plan embodying explicit, neutral limitations on the conduct of individual officers." *Id.* The fact that the plan was not a statewide written plan does not convince us that the balance weighs in favor of Appellant.

Appellant argues further that the lack of a comprehensive statewide program could cause a potential problem in Springdale due to the overlapping jurisdictions of numerous law enforcement agencies in the area. We do not address this argument because there is no evidence that such a problem occurred in this case, and we do not issue advisory opinions. *State v. Banks,* 322 Ark. 344, 909 S.W.2d 634 (1995).

Appellant also contends that because he was not one of the fifth cars systematically detained for further inquiry during the roadblock, there was insufficient cause to detain him. Appellant acknowledges that Officer Bell testified that he smelled intoxicants on Appellant's breath and that he observed an open container in the console of Appellant's vehicle, but contends this is not a sufficient level of individualized suspicion to remove a motorist from the roadblock for further inquiry.

We could not disagree more. The Supreme Court held in *Martinez-Fuerte,* 428 U.S. at 563, that it is constitutional to refer motorists selectively to a secondary inspection area at a fixed checkpoint on the basis of criteria that would not sustain a roving-patrol stop. Officers should have wide discretion in selecting motorists to be diverted for brief questioning. *Id.* at 563-64. Here, the roadblock was lawfully conducted. The smell of intoxicants coming from Appellant's vehicle and on Appellant's breath and the sight of a container of liquor and ice in the console of Appellant's vehicle constituted articulable facts to support the officers' individualized suspicion that Appellant was driving while intoxicated. Thus, it was constitutional for Appellant to be removed from the roadblock for further inquiry even though his was not one of the fifth vehicles.

 Appellant contends there was no legal authority to detain a driver while passengers were checked for outstanding warrants because such a detention has no relation to deterring or detecting unlicensed drivers or vehicles. This argument is based upon Officer Bell's testimony that if a vehicle contained passengers, the passengers would have been made to identify themselves and to a warrant check. Appellant does not contend that he was detained as a result of a warrant check on a passenger in his vehicle. Accordingly, we do not address this issue further as to do so would be to issue an advisory opinion. *Banks*, 322 Ark. 344, 909 S.W.2d 634.

In summary, considering the totality of the circumstances, Appellant has not demonstrated that the officers conducting the roadblock in this case committed any prohibited acts such as profiling cars or stopping them at random. Appellant's expectation of privacy was not invaded solely at the unfettered discretion of the field officers; rather, the officers acted pursuant to a plan for a fixed checkpoint that was approved by their shift commander. Appellant has therefore failed to demonstrate any violation of the Fourth Amendment to the United States Constitution or Article 2, Section 15, of the Arkansas Constitution or any prejudice.

The judgment of conviction is affirmed.