IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE

FILED

May 12, 1997

FOR PUBLICATION

Cecil Crowson, Jr.
Appellate Court Clerk

Filed: May 12, 1997

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellant/Cross-Appellee, | ) | HAMILTON CRIMINAL |
| | ) | |
| | ) | |
| Vs. | ) | HON. STEPHEN M. BEVIL, |
| | ) | JUDGE |
| | ) | |
| SARAH HUTTON DOWNEY, | ) | |
| | ) | |
| Appellee/Cross-Appellant. | ) | No. 03-S-01-9604-CC-00039 |

**For Appellant/Cross-Appellee:**

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

John P. Cauley
Assistant Attorney General
Nashville, Tennessee

At trial:
Gary D. Gerbitz
District Attorney General

Charles A. Cerney, Jr.
Assistant District Attorney General
Chattanooga, Tennessee

**For Appellee/Cross-Appellant:**

Jerry H. Summers
Summers, McCrea & Wyatt
Chattanooga, Tennessee

**For Amicus Curiae,
Tennessee Association of Criminal Defense Lawyers:**

Jonathan D. Cooper
Daniel & Oberman
Knoxville, Tennessee

# O P I N I O N

AFFIRMED.                                              ANDERSON, J.

We granted this appeal to answer a question of first impression: whether a sobriety roadblock at which police officers stop and question motorists whose prior conduct is unremarkable and free from suspicion, is an unreasonable seizure in violation of article I, section 7 of the Tennessee Constitution?

The defendant was arrested for driving under the influence after being stopped at a roadblock in Hamilton County, Tennessee. Prior to being stopped, the defendant's conduct was unremarkable and not suspicious. At trial, the defendant moved to suppress the evidence on the ground that the roadblock was unconstitutional because it was an unreasonable seizure in violation of the Tennessee Constitution.[1] The trial court overruled the motion. On appeal, the Court of Criminal Appeals concluded that the use of a roadblock is not a *per se* violation of the Tennessee Constitution. But it held that the roadblock in this case was an unreasonable seizure because there was no supervisory or administrative authority for the roadblock, its location, or procedures. As a result, these policy decisions were left to the unrestrained discretion of officers in the field.

We recognize the State's compelling interest in detecting and deterring motorists who drive while under the influence of alcohol. The drunk driver cuts a wide swath of death, pain, grief, and untold injury across the roads of Tennessee. The carnage and tragedy is recorded daily in our newspapers and on our television screens. Indeed, the Legislature at nearly every session has strengthened the driving under the influence laws in recognition of the strong public interest in solving the problem. No one can dispute the tragedy and magnitude of the drunk driving problem or the State's interest in eradicating it.

We, therefore, conclude that the use of a sobriety roadblock, although a seizure, can be a reasonable seizure under the Tennessee Constitution,

---

[1] The defendant specifically argued that the roadblock violated article I, sections 7 and 8 of the Tennessee Constitution, that law enforcement officers' claim that the roadblock was for the purpose of checking drivers' licenses was a subterfuge for detecting motorists under the influence, and that officers failed to follow certain administrative guidelines governing the roadblock.

provided it is established and operated in accordance with predetermined operational guidelines and supervisory authority that minimize the risk of arbitrary intrusion on individuals and limit the discretion of law enforcement officers at the scene. As a result, we affirm the Court of Criminal Appeals for the reasons articulated below.

In so holding, we observe that article I, section 7 of the Tennessee Constitution, which prohibits unreasonable searches and seizures, imposes limits on search and seizure powers in order to prevent arbitrary interference by the police with the privacy and personal liberty of individuals. Seizures short of arrest may be made on lesser grounds than probable cause, but usually require a founded suspicion based on articulable facts that the person is or has engaged in criminal activity. A roadblock seizure, therefore, is a departure from these fundamental constitutional principles. It permits officers to stop and question persons whose conduct is ordinary, innocent, and free from suspicion.

In order for us to determine whether a seizure which is less intrusive than a traditional arrest is reasonable, we must balance the public interest served by the seizure with the severity of the interference with individual liberty. A central concern of the United States Supreme Court, and other state courts, in this balancing analysis "has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field . . . [and] that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." Brown v. Texas, 443 U.S. 47, 50-51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). We agree that this is the appropriate constitutional standard to be applied.

The decision we announce today, which upholds the constitutionality of sobriety roadblocks, also controls our decision on an application for appeal filed in the case of State v. Daniel G. Hampton. In that case, the issue is the same - i.e., whether the sobriety roadblock violated the Tennessee Constitution? We

agree with the Court of Criminal Appeals that the roadblock in <u>Hampton</u> did not violate the Tennessee Constitution and that the conviction should be upheld. Accordingly, we deny the <u>Hampton</u> application for appeal by separate order.

## BACKGROUND

On August 8, 1992, at approximately 12:00 a.m., Lt. Ronnie Hill of the Tennessee Highway Patrol and numerous other officers set up a highway roadblock on Hixson Pike in Hamilton County, Tennessee. Hill was assisted by members of the Chattanooga Police Department DUI task force, the Hamilton County DUI task force, and auxiliary officers of the Hamilton County Sheriff's Department. Hill did not obtain the approval of a superior officer regarding the establishment, time or location of the roadblock.

According to Lt. Hill, the roadblock was conducted pursuant to written guidelines established by the Department of Safety for drivers' license checks, which he believed applied to roadblocks for any purpose. Hill said that the purpose of his roadblock was to check drivers' licenses, but he admitted that the officers assisting him were members of DUI task forces. Hill also said that he chose the location and that there was no advance public announcement of the existence, time or location of the roadblock.

Hill supervised the operation of the roadblock and gave instructions to the other officers at the scene. Four to six patrol cars with flashing blue lights were positioned on each side of the road and in the center turn lane. The lanes were marked by existing lines on the highway. Hill testified that there was adequate visibility to avoid accidents and congested traffic. All motorists traveling north or south on Hixson Pike were stopped unless traffic became impeded, in which case all traffic was permitted to pass through the roadblock until the congestion was relieved. According to Hill, officers did not exercise discretion as to which motorists were stopped. Over one hundred cars were stopped in the two hours the roadblock was operated.

The defendant was stopped at the roadblock by Hamilton County Deputy Sheriff Robert Starnes, a member of the DUI task force. Starnes testified that the roadblock was set up to check drivers' licenses and other traffic violations, but not to check for drunken drivers. He said that the defendant did nothing to arouse his suspicion as she approached the roadblock and that she was stopped for the same purpose and in the same manner as other motorists. He asked to see the defendant's drivers' license and, after smelling the odor of alcohol and learning that she had been drinking, instructed her to pull to the side of the road. After sobriety testing, the defendant was arrested.

At trial, the defendant moved to suppress the evidence on the grounds that the roadblock was unconstitutional because there was no suspicion that a crime had been committed before the stop and the detention was an unreasonable seizure. The trial court overruled the motion and found that the roadblock had been established and supervised by Lt. Hill in accordance with Tennessee Department of Safety General Order 410 for the purpose of detecting unlicensed drivers.

On appeal, the Court of Criminal Appeals found that neither General Order 410 nor any other General Order governing roadblocks was in effect at the time of this stop.[2] Moreover, the court observed that the roadblock in this case was operated from midnight to 2:00 a.m., that a mobile breathalyser unit was on the scene for use during the roadblock, and that virtually every officer at the scene was a member of the City or County DUI task force. Accordingly, the court held that the evidence preponderated against the trial court's finding that the roadblock was established under General Order 410 to detect unlicensed drivers.

We agree with the Court of Criminal Appeals' determination that the evidence in this record preponderates against the trial court's finding that the

---

[2] The record indicates that Lt. Hill did not identify a specific administrative order that he was following and that a copy of General Order 410 was introduced as an exhibit by the defense.

roadblock was established to detect unlicensed motorists.  We therefore address the constitutionality of the stop in this case as a sobriety roadblock.[3]

## CONSTITUTIONAL FRAMEWORK

We begin our review by examining the constitutional protections implicated when a citizen is stopped at a highway roadblock.  The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, <u>against unreasonable searches and seizures</u>, shall not be violated . . . ." (emphasis added).  Similarly, article I, section 7 of the Tennessee Constitution provides:

> Unreasonable searches and seizures-- General warrants.-- That the people shall be secure in their persons, houses, papers, and possessions, <u>from unreasonable searches and seizures</u>; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

(Emphasis added).

The essence of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials."  <u>Camara v. Municipal Court</u>, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). A similar purpose was noted in <u>Sneed v. State</u>, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968), where this Court observed that "article I, section 7 is identical in intent and purpose with the Fourth Amendment," and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive."  <u>See also</u> <u>State v. Watkins</u>, 827 S.W.2d 293 (Tenn. 1992).

---

[3] Accordingly, we do not address the specific provisions of General Order 410, nor do we consider any provision of law that may authorize Tennessee Highway Patrol Officers to make stops for the purpose of checking drivers' licenses.  <u>See</u>, <u>e.g.</u>, Tenn. Code Ann. § 4-7-104 and § 55-50-351.

The constitutionality of sobriety roadblocks is a question of first impression for this Court,[4] and there is no settled body of state constitutional law directly on point, although there are a number of state court cases which are instructive. Thus, in reviewing the constitutionality of stopping motorists pursuant to a highway roadblock, cases construing the Fourth Amendment are persuasive. Nonetheless, because our review and our decision are based solely on the provisions of the Tennessee Constitution, we recognize, as we have in the past, that article I, section 7 may afford citizens of Tennessee even greater protection. State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989); Miller v. State, 584 S.W.2d 758 (Tenn. 1979).

## CONSTITUTIONALITY OF SOBRIETY ROADBLOCKS

We continue our analysis by examining how the United States Supreme Court has interpreted the Fourth Amendment requirement that a seizure must be reasonable. In general, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person" for the purpose of Fourth Amendment analysis. Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968).

Obviously, a formal arrest is a seizure of the person and to be considered reasonable, it must be founded upon probable cause to believe a person has committed a criminal offense. Whether probable cause is present depends upon whether the facts and circumstances and reliable information known to the police officer at the time of the arrest "were sufficient to warrant a prudent man in believing that the [individual] had committed an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

---

[4] The Court of Criminal Appeals has upheld sobriety roadblocks in the following cases: State v. Daniel G. Hampton, No. 03-C-01-9503-CR-00107 (Tenn. Crim. App., July 3, 1996, Knoxville); State v. George E. Cunningham, No. 03C01-9112-CR-00389 (Tenn. Crim. App., Aug. 13, 1992, Knoxville); State v. Matthew Manuel, No. 87-96-III (Tenn. Crim. App., Nov. 23, 1988, Nashville). The Court of Criminal Appeals has also addressed roadblocks for the purpose of checking drivers' licenses under Tennessee Department of Safety General Order 410. State v. Binion, 900 S.W.2d 702 (Tenn. Crim. App. 1994); State v. David Lynn Hagy, No. 03C01-9505-CR-00152 (Tenn. Crim. App., Dec. 5, 1995, Knoxville).

The Fourth Amendment is also implicated in encounters between police officers and citizens that do not amount to full-scale arrests. In Terry v. Ohio, supra, for example, the Supreme Court stressed that "[i]t is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for the crime -- 'arrests' in traditional terminology." Accordingly, the Court held that in some cases, an officer may briefly detain an individual with less than probable cause so long as he or she has a reasonable suspicion, based on "specific and articulable facts," that a crime has been or is about to be committed. 392 U.S. at 16, 21, 88 S.Ct. at 1877, 1880. This so-called "investigatory stop," which is less intrusive than a full-scale arrest, may be made upon a "reasonable suspicion" of criminal activity, which is "a less demanding standard than probable cause." Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

In analyzing the reasonableness of a seizure less intrusive than a traditional arrest in later cases, the Supreme Court, as it did in Terry, balanced the "public interest against the Fourth Amendment interest of the individual." 392 U.S. at 20-21, 88 S.Ct. at 1879; United States v. Brignoni-Ponce, 422 U.S. 873, 95 S. Ct. 2574, 45 L.Ed.2d 607 (1975). The balancing test cited in Terry stemmed from Camara v. Municipal Court, supra, in which the Court weighed three significant factors in invalidating warrantless administrative searches of buildings to detect conditions hazardous to public health and safety: the public interest to be achieved, the ability to achieve the public interest, and the invasion caused to the citizen's privacy. 387 U.S. at 534, 87 S.Ct. at 1733.

This balancing approach was applied to a fixed checkpoint stop for the first time in United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). There, the court applied the balancing test to uphold fixed checkpoints near the border at which all vehicles were stopped. The court determined that these checkpoints served a strong government interest by enabling law enforcement officers to detect illegal aliens and that the intrusions on motorists caused by the checkpoint stop were slight. While acknowledging

that the stops constituted "seizures," the court concluded that the checkpoints advanced the law enforcement interest to a greater degree than stops requiring individualized, reasonable suspicion.

Later, Michigan v. Sitz, 496 U.S. 444, 453, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990), was the first case where the United States Supreme Court specifically applied the balancing analysis and held that a state's use of a highway sobriety checkpoint does not *per se* violate the Fourth Amendment to the United States Constitution. The roadblock challenged in that case was established pursuant to a sobriety checkpoint pilot program developed by the Michigan Department of State Police. As provided under the guidelines, all vehicles passing through the checkpoint were stopped and their drivers briefly examined for signs of intoxication. In cases where a checkpoint officer detected signs of intoxication, the motorist was directed to a location out of the traffic flow where an officer checked the motorist's drivers' license and registration and, if warranted, conducted further sobriety tests and made an arrest. All other drivers were permitted to resume their journey. The checkpoint was operated for 75 minutes, during which 26 vehicles were stopped. The average delay was 25 seconds for each vehicle. Two motorists were detained for field sobriety testing and one was arrested. Id.

After observing that the roadblock stop was a "seizure" under the Fourth Amendment, the Sitz court reviewed the three-part balancing analysis applied in Brown v. Texas, supra, and other earlier cases. The court said that the reasonableness of a seizure which is less intrusive than a traditional arrest depends on a balancing of "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." Id., 443 U.S. at 50-51, 99 S.Ct. at 2640. The Brown court explained the basis for the balancing test:

> A central concern in balancing these competing considerations in a
> variety of settings has been to assure that an individual's
> reasonable expectation of privacy is not subject to arbitrary
> invasions solely at the unfettered discretion of officers in the field.

> [Citations omitted]. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.

Id.

Applying the public interest test to sobriety roadblocks, the Sitz court emphasized the magnitude of the drunk driving problem and the states' strong interest in solving it. Reviewing the second part of the analysis - the degree to which the seizure advanced the public interest - the court stressed that the empirical data showed 1.6% of the motorists stopped at the Michigan checkpoint had been arrested for driving under the influence. The court also observed that an expert witness had testified that studies of checkpoints used in other states revealed that about 1% of all motorists stopped were arrested for drunk driving. Id., 496 U.S. at 455, 110 S.Ct. at 2487-2488.[5]

Finally, with regard to the individual liberty analysis, the court, stressing that the checkpoints were selected pursuant to guidelines and that uniformed police officers stopped every car, concluded that "the measure of the intrusion on [law abiding] motorists stopped briefly at sobriety checkpoints is slight." Id., 496 U.S. at 451-453, 110 S.Ct. at 2486-2487. Dissenting in Sitz, Justices Brennan and Stevens argued that the majority failed to analyze whether sobriety checkpoints advance the public interest to any degree greater than traditional stops based on suspicion and, therefore, the state had failed to show that sobriety checkpoint seizures were reasonable. Id.

## SOBRIETY ROADBLOCKS -- STATE JURISDICTIONS

A majority of state courts have followed the balancing analysis and have concluded that roadblocks may survive constitutional scrutiny if they are

---

[5] It was partly on this basis that the court distinguished Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In Prouse, the court invalidated the practice of using random, roving stops to check for unlicensed drivers because there was no evidence that such a practice would be effective. Moreover, the use of such stops would involve "standardless and unconstrained" discretion. Id., 440 U.S. at 661, 99 S.Ct. at 1400.

operated under guidelines which minimize intrusiveness and limit officers' discretion.[6]

A minority of jurisdictions, however, including Michigan after the United States Supreme Court's remand in Michigan v. Sitz, supra, have invalidated roadblocks under state constitutional provisions. Sitz v. Dept. of State Police, 506 N.W.2d 209 (Mich. 1993). These courts, while stopping short of holding that all roadblocks are *per se* unconstitutional, have compared the effectiveness of roadblocks with less intrusive law enforcement methods and have concluded that the state's interest in detecting drunken driving does not outweigh the intrusion on individual liberty or justify departure from traditional stops requiring individual suspicion. See State v. Henderson, 756 P.2d 1057 (Idaho 1988); State v. Church, 538 So.2d 993 (La. 1989); Ascher v. Commissioner of Public Safety, 519 N.W.2d 183 (Minn. 1994); State v. Koppel, 499 A.2d 977 (N.H. 1985); State v. Blackburn, 620 N.E.2d 319 (Ohio Mun. 1993); City of Seattle v. Mesiani, 755 P.2d 775 (Wash. 1988). One state court has held that roadblocks are *per se* unconstitutional under its state constitution. Pimental v. Dept. of Transportation, 561 A.2d 1348 (R.I. 1989).

Whether upholding or invalidating a sobriety roadblock, nearly every court has used the balancing analysis discussed in Brown v. Texas, supra. Moreover, the courts universally recognize the state's significant interest in attempting to alleviate the often tragic consequences of drunk driving. All courts have recognized that there is a very strong societal interest in dealing effectively with the problem of drunk driving.

---

[6] See Hagood v. Town of Town Creek, 628 So.2d 1057 (Ala. Crim. App. 1993); Mullinax v. State, 920 S.W.2d 503 (Ark. App. 1996), aff'd, 938 S.W.2d 801 (Ark. 1997); Ingersoll v. Palmer, 743 P.2d 1299 (Cal. 1987); People v. Rister, 803 P.2d 483 (Col. 1990); State v. Jones, 483 So.2d 433 (Fla. 1986); O'Kelley v. State, 436 S.E.2d 760 (Ga. App. 1993); State v. Loyd, 530 N.W.2d 708 (Iowa 1995); State v. Barker, 850 P.2d 885 (Kan. 1993); Kinslow v. Com., 660 S.W.2d 677 (Ky. Ct. App. 1983); State v. Leighton, 551 A.2d 116 (Me. 1988); Little v. State, 479 A.2d 903 (Md. 1984); Com. v. Anderson, 547 N.E.2d 1134 (Mass. 1989); State v. Welch, 755 S.W.2d 624 (Mo. Ct. App. 1988); State v. Mazurek, 567 A.2d 277 (N.J. Super. 1989); State v. Bates, 902 P.2d 1060 (N.M. App. 1995); People v. Scott, 483 N.Y.S.2d 649, 473 N.E.2d 1 (1984); City of Bismarck v. Uhden, 513 N.W.2d 373 (N.D. 1994); Com. v. Tarbert, 535 A.2d 1035 (Pa. 1987); Crandol v. City of Newport News, 386 S.E.2d 113 (Va. 1989); Carte v. Cline, 460 S.E.2d 48 (W.Va. 1995).

Courts disagree, however, over whether the state interest is effectively served by the use of roadblocks. In this regard, courts upholding roadblocks generally refrain from analyzing whether roadblocks are <u>more</u> effective in advancing the state's interest in eradicating drunk driving than less intrusive means.[7] Instead, these courts recognize that roadblocks are effective tools for use in detecting impaired drivers. Those views are expressed by Professor LaFave:

> [I]t is certainly arguable that mere patrol and stoppings based upon the <u>Terry</u> standard do not produce what the <u>Camara</u> Court referred to as 'acceptable results.' For one thing, even if a patrolling officer is fortunate enough to be in the vicinity where a drunk driver is operating his vehicle, it does not necessarily follow that the driver will at that particular time drive his car in such a fashion as to create a reasonable suspicion justifying a stop. And the chances of such observation in the first place are rather slight, given the substantial number of intoxicated drivers on the road.

4 W. LaFave, <u>Search and Seizure: A Treatise on the Fourth Amendment</u>, (3rd ed. 1995), at 692. Moreover, courts have stressed that roadblocks further the state's interest not only by <u>detecting</u> drunk drivers but also by <u>deterring</u> such behavior, particularly when the roadblock is accompanied by advance publicity. In <u>State ex rel. Ekstrom v. Justice Court</u>, 663 P.2d 992, 1001 (Ariz. 1983), the Court noted:

> The efficacy of a deterrent roadblock is heightened by publicity in the media. . . . Such publicity would warn those using the highways that they might expect to find roadblocks designed to check for sobriety; the warning . . . should certainly have a considerable deterring effect by either dissuading people from taking 'one more for the road,' persuading them to drink at home, or inducing them to take taxicabs. Any one of these goals, if achieved would have the salutary effect of interfering with the lethal combination of alcohol and gasoline. Advance notice would limit intrusion upon personal dignity and security because those being stopped would anticipate and understand what was happening.

---

[7] By contrast, courts that have invalidated roadblocks have questioned whether roadblocks are the least intrusive means through which to advance the state's interest in curbing drunken driving. As the Louisiana Supreme Court said, "the effectiveness of roadblocks is questionable, especially when weighed against other measures less intrusive on individual privacy, such as roving patrols which act only when there is an articulable basis for a stop." <u>State v. Church</u>, 538 So.2d at 997; <u>see also</u> <u>State v. Henderson</u>, 756 P.2d at 1060 ("the efficacy of roadblocks is questionable"); <u>Pimental v. Dept. of Transportation</u>, 561 A.2d at 1352 ("less intrusive means exist to address the drunk driving problem").

(Feldman, J., concurring).  Accordingly, the effectiveness of roadblocks to detect and to deter drunk driving has led the majority of courts to favor their use.

Finally, with regard to the intrusiveness of the roadblock, the majority of courts have stressed that roadblocks must be set up in accordance with neutral, objective criteria and operated in a manner that minimizes intrusiveness and the discretion afforded to individual officers.  In Michigan v. Sitz, supra, for example, the United States Supreme Court placed emphasis on the fact that the roadblock was operated under written guidelines setting forth procedures governing checkpoint operation, site selection, and publicity that left virtually no discretion to individual officers at the scene, and in Brown v. Texas, supra, the court required a plan embodying explicit, neutral limitations on the conduct of individual officers.  As suggested by one commentator, a "police procedure is less threatening to [constitutional] values when the discretionary authority of the police (and thus the risk of arbitrary action) is kept at an absolute minimum."  Moreover, "a police procedure constitutes less of an imposition on [constitutional] interests if that procedure has an appearance of regularity to it and is undertaken with sufficient advance notice" not only to the public but also to the approaching motorist.  LaFave, supra, at 696, 702-704.

Several state courts have developed guidelines that govern the questions of minimizing intrusiveness and limiting discretion.  Among them are Iowa, California, and Kansas.  See State v. Loyd, 530 N.W.2d 708 (Iowa 1995); Ingersoll v. Palmer, 743 P.2d 1299 (Cal. 1987); State v. Deskins, 673 P.2d 1174 (Kan. 1983).  The guidelines include supervisory authority which carefully targets the time and location of roadblocks and establishes neutral procedures for their operation.  They also include adequate warnings, advance publicity, minimizing length and nature of detention, adequate safety precautions, and the availability of less intrusive methods for combating the problem.

A list of relevant factors, obviously, can take any length or form.  Not every factor must weigh in favor of the state to uphold a given roadblock, nor is any

single one dispositive of the issue. Instead, the overriding question is whether the roadblock was established and operated in a constitutionally reasonable manner that minimized the intrusion on individuals and limited the discretion afforded to officers at the scene.

## ANALYSIS UNDER THE TENNESSEE CONSTITUTION

As previously noted, the use of sobriety roadblocks is a question of first impression for this Court and there is no settled body of state constitutional law on the issue. We therefore adopt the balancing test outlined in Michigan v. Sitz, supra, as the appropriate constitutional standard, so that when a seizure occurs, an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field, and the seizure is carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.

We recognize the State's compelling interest in detecting and deterring motorists who drive while under the influence of alcohol. The statistics are overwhelming. As the court noted in Sitz, more deaths and injuries have resulted from such motor vehicle accidents on our nation's highways than from all the wars this country has fought. 496 U.S. at 456, 110 S.Ct. at 2488 (Blackmun, J., concurring).

We, therefore, join the majority of jurisdictions who have concluded that the use of a sobriety roadblock may be used to advance the State's compelling interest provided it is established and operated in a manner that minimizes intrusion and limits discretion. In this regard, we observe that the criteria delineated in Loyd, Ingersoll, and Deskins provide the necessary framework for analysis.

We are convinced that roadblocks are effective tools in advancing the State's interest in solving a serious public danger. We agree with the Sitz Court that we should not determine which among reasonable law enforcement

-14-

approaches is the most effective. We leave that decision to politically accountable public officials who are responsible for limited public resources.

In the present case, as the Court of Criminal Appeals observed, some aspects of the roadblock were consistent with constitutional standards. For example, the officers stopped all cars traveling in both directions; when the traffic became congested, motorists were permitted to pass through the roadblock. The discretion of the individual officers at the scene, therefore, was limited as to what motorists were to be stopped. Similarly, safety measures were apparently taken to warn approaching motorists of the roadblock. The roadblock was set up in a safe and visible area and consisted of uniformed officers and marked patrol cars with flashing blue lights.

All of the remaining evidence, however, indicated that this roadblock was not established and operated in a manner that was consistent with article I, section 7 of the Tennessee Constitution. First and foremost, the decision to set up a roadblock was made by an officer in the field. Likewise, the site selected for the roadblock and the procedure to be used in operating the roadblock were matters left to the discretion of an officer in the field. No supervisory authority was sought or obtained, and no administrative decisions were made with regard to these critical factors. The State maintains on appeal that the absence of formal, supervisory participation was of "little weight" since Lt. Hill supervised the roadblock at the scene. We disagree. Virtually every court has emphasized the importance of limiting the discretion of police officers at the scene. We agree with the observation of the Pennsylvania Supreme Court that

> the possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. First the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. . . . Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

Com. v. Tarbert, 535 A.2d at 1043.  Lt. Hill's concessions that supervisory and administrative authority was not sought makes it crystal clear that proper measures were not taken to prevent the unfettered discretion of officers at the scene.

The lack of administrative or supervisory decision making was also evidenced by the absence of publicity surrounding the roadblock.[8]  We believe advance publicity furthers the deterrence rationale for the use of a sobriety roadblock.  One state court has observed: "It is the publicity about roadblocks [that] is the chief means of deterring driving while intoxicated."  State v. Koppel, 499 A.2d at 982.  The State's contention that advanced publicity was unnecessary because the roadblock was well-marked at the scene completely ignores the deterrence rationale.  Accordingly, this omission in the present case likewise weighs against the reasonableness of the roadblock used to stop the defendant.

Finally, the absence of supervisory or administrative decision-making in this case may have contributed to creating an issue as to the purpose of the roadblock.  The testimony in the record is that officers set up this roadblock for the purpose of checking drivers' licenses in accordance with General Order 410 of the Department of Safety.  All the remaining evidence in the record, however, indicates that the actual purpose was the detection of alcohol-impaired motorists.  We do not decide whether the roadblock was a "subterfuge" or a "pretext" for investigating drunk drivers, or address the implications that might follow such a finding.[9]  Instead, this discrepancy in the proof is a reflection of the overall failure by law enforcement officers to establish this roadblock in a manner consistent with administrative and supervisory oversight.  We conclude, therefore, that this

---

[8] The dissent labels this conclusion "merely speculation," and conjectures that "administrative officials legitimately could have decided that an unpublicized roadblock would have a greater deterrent effect."  We merely stress that the presence or absence of publicity is a factor in assessing the reasonableness of the roadblock.  The absence of evidence in this record regarding the publicity or lack of publicity surrounding this roadblock, we believe, is indicative of the State's overall failure to show that this roadblock was established in accordance with supervisory and administrative standards.

[9] We observe, however, that General Order 410 specifically stated that a roadblock "cannot be used as a subterfuge to search for other crimes."

likewise is a factor that weighs against the reasonableness of this particular roadblock.

The dissent agrees with the constitutional principles we have cited but disagrees with the result we have reached. The primary objection is to our conclusion that the absence of supervisory and administrative authority weighed against the reasonableness of this roadblock. The dissent instead infers from the gathering of county and city law enforcement officers at the scene that the roadblock was conducted with administrative oversight.

We respectfully disagree. There is no evidence in this record as to the supervisory and administrative procedures to be followed in establishing a roadblock. Moreover, Lt. Hill did not testify that he sought or obtained any type of approval from any supervisory officer; had he done so, he could simply have testified as to the authority he was given and the procedures he followed. Instead, his testimony is clear that he alone made the decision to set up this roadblock; he alone determined the manner of its operation; and he alone, as an officer in the field, supervised it with unrestrained discretion. That he apparently was able to persuade city and county personnel to assist in the operation is not, in our view, probative of the overall supervisory oversight and administrative procedure. Accordingly, the evidence in the record simply does not support the attenuated inference drawn by the dissent.

## CONCLUSION

We conclude that a highway roadblock which is established and operated in accordance with predetermined guidelines and supervisory authority that minimize the risk of arbitrary intrusions on individuals and limit the discretion of law enforcement officers at the scene is valid under the Tennessee Constitution. We, however, agree with the Court of Criminal Appeals that the roadblock in this case was not conducted in accordance with such restrictions and constituted an unreasonable seizure under article I, section 7 of the Tennessee Constitution. Accordingly, the judgment of the Court of Criminal Appeals is affirmed. Costs of

the appeal are taxed one-half to the State of Tennessee and one-half to the

defendant/cross-appellant, Sarah Hutton Downey.

_____

E. RILEY ANDERSON, JUSTICE


**Concur:**
Birch, C.J.
Reid, J. and O'Brien, Sp.J.

Drowota, J., concurring and dissenting - see separate Concurring/Dissenting Opinion

IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

May 12, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,                    )        FOR PUBLICATION
                                       )
        Appellant/Cross-Appellee,      )        Filed:  May 12, 1997
                                       )
v.                                     )        HAMILTON CRIMINAL
                                       )
SARAH HUTTON DOWNEY,                   )         Hon. Stephen M. Bevil
                                       )            Judge
                                       )
        Appellee/Cross-Appellant.      )
                                       )
                                       )        No. 03S01-9604-CC-00039
                                       )

**CONCURRING/DISSENTING OPINION**

        The majority holds that a sobriety roadblock is valid under the Tennessee

Constitution so long as it is established and operated in accordance with

predetermined guidelines and supervisory authority that minimize the risk of

arbitrary intrusions on individuals and limit the discretion of law enforcement

officers at the scene.  According to the majority, matters which must be

determined by prior administrative action to validate a sobriety roadblock include,

the decision to hold the roadblock, the selection of the time and place for the

roadblock, and the designation of which vehicles will be stopped.  Considering

those factors, the majority concludes that the sobriety roadblock in this case was

constitutionally infirm because an officer in the field, rather than administrative

personnel, made the decision to set up the roadblock and selected the site and

time for its operation.

I agree with the majority as to the general principles of law governing a sobriety roadblock. To be constitutionally valid, a sobriety roadblock must be established and conducted in accordance with a prefixed, objective plan which limits unfettered police discretion and minimizes the risk of arbitrary intrusions. I write separately to express my disagreement with the majority's conclusion that the roadblock in this case lacked administrative oversight and, therefore, was constitutionally infirm.

The facts of this case are permeated with administrative oversight. Although he may have been on patrol that day, Lt. Hill was not simply an officer in the field who arbitrarily decided to have a roadblock. That Lt. Hill had obtained prior administrative approval to conduct a roadblock on August 8, 1992, at 12:00 a.m., on Hixson Pike, in Hamilton County, Tennessee, is evidenced by the fact that, in addition to the Tennessee Highway Patrol, three different law enforcement agencies participated in the roadblock - - the Chattanooga Police Department DUI task force, the Hamilton County DUI task force, and auxiliary officers of the Hamilton County Sheriff's Department. Certainly, it was advance planning and not mere coincidence which brought four different groups of law enforcement officials together on the same day, at the same time, and at the same location to conduct a roadblock. The majority characterizes the absence of publicity surrounding this roadblock as evidence of the lack of administrative or supervisory decision making. While it is feasible to conclude, as did the majority, that prior publicity of a sobriety roadblock is a deterrent to potential drunk drivers, another equally feasible conclusion is that the risk of being arrested at an unpublicized sobriety roadblock is also a deterrent to potential drunk drivers. Such being the case, the

-20-

majority's characterization of absence of prior publicity as evidence of a lack of administrative decision making is merely speculation, since administrative officials legitimately could have decided that an unpublicized roadblock would have a greater deterrent effect.[10]

The majority opinion acknowledges that the roadblock otherwise complied with constitutional standards. The officers stopped all cars traveling in both directions; when the traffic became congested, motorists were permitted to pass through the roadblock; the discretion of individual officers at the scene was limited; safety measures were taken to warn approaching cars of the roadblock; the site selected for the roadblock was visible; and the procedure used for the roadblock was safe, involving uniformed police officers and marked patrol cars, with flashing blue lights. Because the facts of this case support the conclusion that Lt. Hill had obtained prior administrative approval to conduct the roadblock, and because this roadblock was conducted in a manner which limited unfettered police discretion and minimized arbitrary intrusions, the roadblock, in my view, complied with constitutional standards.

Therefore, I respectfully dissent from the majority's decision and would reverse the Court of Criminal Appeals' judgment and affirm the trial court's denial of the defendant's motion to suppress.

---

[10]While the majority concludes that prior publicity advances the deterrent goal of sobriety roadblocks, I do not understand the majority to hold that publicity is constitutionally required to sustain the validity of a roadblock.

_____
FRANK F. DROWOTA III,
JUSTICE