IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MARCH 1998 SESSION

FILED

September 11, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,

    Appellee,

V.

KENNETH F. WALKER,

    Appellant.

)
)
) C.C.A. No. 03C01-9708-CR-00357
)
) Roane County
)
) Hon. E. Eugene Eblen, Judge
)
) (Vehicle Search)
)
)

FOR THE APPELLANT:

Patrick Cooley
Cooley, Cooley & Agee
P.O. Box 730
Kingston, TN 37763

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Sandy C. Patrick
Assistant Attorney General
Cordell Hull Building, 2d Floor
425 Fifth Avenue North
Nashville, TN 37243-0943

Charles E. Hawk
District Attorney General

Roger Delp
Assistant District Attorney General
P.O. Box 703
Kingston, TN 37763

OPINION FILED: _____

REVERSED

PAUL G. SUMMERS,
Judge

**O P I N I O N**

The appellant, Kenneth F. Walker, pled <u>nolo contendere</u> to a charge of possession of over seventy pounds of a Schedule VI controlled substance with intent to deliver. The appellant, however, reserved the right to appeal a certified question of law pursuant to Rule 37(b)(2)(I) of the Tennessee Rules of Criminal Procedure.

The trial court denied the appellant's motion to suppress the evidence obtained during a vehicle search and entered an order allowing the appeal of the certified question of law. Therefore, the appellant presents two issues for our review:

> (1) whether the trial court erred in overruling his motion to suppress on the ground that the roadblock or checkpoint on the Airport Road exit off Interstate 40 in Roane County, Tennessee is not established and operated in a manner consistent with Article I, Section 7 of the Tennessee Constitution; and

> (2) whether the trial court erred in overruling the appellant's motion to suppress based on a motor vehicle stop, detention, search and seizure of the appellant by law enforcement officers in Roane County, Tennessee conducting a roadblock in violation of the appellant's rights under Article I, Section 7 of the Tennessee Constitution.

After carefully reviewing the record in this case, we respectfully reverse the judgment of the trial court and dismiss the charge against the appellant.

## I. FACTS

On the afternoon of May 18, 1996, Deputy Dennis Worley of the Roane County Sheriff's Department, along with jailer Joe Brock of the Roane County Sheriff's Department, conducted a roadblock just inside the Roane County line on the Airport Road exit off of Interstate 40. The appellant was traveling eastbound on Interstate 40. Two large yellow signs that stated "DUI Drug Checkpoint Ahead" were placed on eastbound Interstate 40 just west of Airport Road. One sign was placed in the median, and another was placed on the

shoulder of the roadway, just before the Roane County line. Just past the signs, the interstate curves immediately to the right and the Airport Road exit appears.

At approximately 5:45 p.m., the appellant approached the roadblock that had been established at the end of the Airport Road exit ramp off of Interstate 40. According to the testimony at the motion to suppress hearing, Deputy Worley explained the roadblock to the appellant and determined that the appellant did not appear to be impaired. Deputy Worley visually inspected the inside of the appellant's car and saw no contraband inside the vehicle.

However, according to Deputy Worley's testimony, he looked for certain "indicators" that the appellant may be carrying drugs. First, older model cars with large cargo areas are suspicious. Second, the key ring for the car had only two keys on it, indicating, according to Worley, that the car is a rental, that it belongs to someone else, or that the key ring is being passed to several individuals so there are no personal keys on there. Third, Deputy Worley noticed food wrappers in the floorboard of the front passenger's side of the car and that there was a large pile of clothing, a pillow, and a blanket on the back seat of the car. Also, on the seat next to the appellant were a cellular telephone, a road atlas, and some handwritten directions on a scratch pad. In addition, according to Deputy Worley, the appellant had several red peppers, which some people believe mask odor and prevent drug-sniffing dogs from detecting drugs, scattered along the dash of his vehicle.

During his stop of the appellant, Deputy Worley asked the appellant why he had gotten off the interstate at this remote exit, especially since there were no restaurants or service stations there. The appellant indicated that he was sightseeing; and when asked by Worley what sights he was looking for, the appellant did not offer a reply.

Deputy Worley asked the appellant if he could search his car, but the appellant refused to consent to a search. Deputy Worley told the appellant that based on the evidence in plain view in the car, the appellant's attempt to cover papers, and his nervous demeanor, the deputy believed he had reasonable suspicion to allow a canine sniff of the vehicle. Worley told the appellant to pull his car off the road onto the shoulder.

Worley told the appellant to stay inside the car, and Brock watched the appellant so that he did not attempt to flee or use a weapon. Worley got his dog and had him sniff the appellant's car. The dog, King, began scratching the trunk area of the car. Worley returned the dog to his vehicle and then went back to the appellant's car. He asked the appellant to step out of the car. Worley did a pat down search of the appellant and took his car keys from him. Worley and Brock asked the appellant to stand away from the car while they inspected the trunk. However, according to Deputy Worley, the appellant apparently would not stand away from the car, so Brock put the appellant in the back of the patrol car.

Worley opened the trunk of the appellant's car and found several bundles of a substance that smelled like marijuana under a drop cloth. Some of the bundles were marked according to weight, with the sum totaling about two hundred pounds. The appellant was then arrested.

## II. ARGUMENTS

The appellant argues that the Roane County Sheriff's Department's roadblock is per se unconstitutional. He contends that the roadblock is "set up as a ruse" and "not designed to combat the DUI problem that exists in this state." He further asserts that the roadblock is intrusive and is basically a "'searchpoint' whereby the officers seek to conduct warrantless searches of vehicles that have lawfully taken the interstate exit."

In support of his argument, the appellant addresses several aspects of the roadblock. First, the appellant recognizes that the Roane County Sheriff's Department has attempted to establish guidelines for sobriety roadblocks, but contends that the guidelines do not authorize "the scheme employed by Deputy Worley at the Airport Road exit" nor authorize a checkpoint to search vehicles for narcotics. Specifically, the appellant notes instructions three through six in Section III of the department's guidelines for conducting sobriety roadblocks (See Appendix A). The appellant asserts that pursuant to the sheriff's department's own guidelines, there was no suspicion that he was impaired from alcohol or drugs and therefore, would not be a threat to the traveling public. Thus, pursuant to the Roane County Sheriff's Department policy, he should have been allowed to proceed. Instead, Deputy Worley, who testified that he had a "hunch" that the appellant was concealing contraband, detained the appellant further.

The appellant asserts that other aspects of the roadblock were inconsistent with constitutional standards as well. First, the decision to establish the roadblock, the location of the roadblock, and the time selected for the roadblock were all determined by Deputy Worley. Furthermore, the appellant argues that the procedures used by the sheriff's department for conducting sobriety roadblocks were written by Worley and then simply ratified by the sheriff. Second, supervisory authority to establish the roadblock was not sought. The appellant cites the procedure that Deputy Worley notified the sheriff by leaving a phone message or pager message that the roadblock was going to be established as well as the fact that Deputy Worley would decide who would participate in the roadblock with him.

Finally, the appellant notes that as in State v. Downey, 945 S.W.2d 102 (Tenn. 1997), the lack of supervisory decision-making was indicated by the absence of publicity surrounding the roadblock in this case. Deputy Worley

-5-

testified that there was no publicity surrounding this roadblock. The appellant emphasizes that all courts that have addressed the constitutionality of roadblocks have consistently recognized the importance of supervisory authority in order to minimize the risk of intrusion on individual liberties by officers in the field. Thus, the absence of publicity is a factor to be considered in determining the reasonableness of the roadblock in this case.

The state, however, argues that the roadblock was operated in accordance with constitutional principles. First, the state notes the Roane County Sheriff's Department's policy and procedure statement for conducting roadblocks. The state further asserts that "Deputy Worley stated that each time a roadblock was planned, department policy required him to notify either the sheriff or the chief deputy sheriff for approval." Without such supervisory authority, a roadblock would not be permitted.

The state contends that the roadblock at which the appellant was stopped was conducted in accordance with established procedure and with supervisory permission. It also notes that Deputy Worley would discuss each roadblock with the sheriff to ensure that each one was uniform. The state further argues that the officers at the roadblock usually wore an orange vest with the word "Sheriff" written across it in black lettering. Furthermore, the state asserts that the area for the roadblock was well marked with police vehicles: a police car with its flashing lights on at the scene and the D.A.R.E. wagon, which was marked with the logo of the Roane County Sheriff's Department.

The state maintains that the purpose of the roadblock in this case was to find alcohol or drug-impaired drivers, not to mislead the public as the appellant contends. It contends that every car was stopped that took the exit off of Interstate 40. As each vehicle stopped, Deputy Worley would explain to the driver that this was a DUI and drug roadblock and engage the person in a

conversation, trying to detect if alcohol or drug impairment was present. The state maintains that the detention was very brief, lasting for only a few seconds.

The state contends that the only similarity in the instant case and Downey is the lack of local publicity before the roadblock. The state notes that the absence of publicity is only one factor to be considered when determining the reasonableness of a roadblock. The state argues, however, that a lack of publicity surrounding a roadblock does not necessarily make the roadblock unreasonable; but in many cases, the absence of publicity increases the deterrent effect upon motorists.

Therefore, the state maintains that the roadblock in this case was not established and operated in violation of Article I, Section 7 of the Tennessee Constitution.

### III. State v. Downey, 945 S.W.2d 102 (Tenn. 1997)

In addressing the issues presented for our review, we are guided by our Supreme Court's decision in State v. Downey, 945 S.W.2d 102 (Tenn. 1997). In that case, the Court addressed the issue of "whether a sobriety roadblock at which police officers stop and question motorists whose prior conduct is unremarkable and free from suspicion is an unreasonable seizure in violation of article I, section 7 of the Tennessee Constitution." Id. at 103.

In reaching its decision in Downey, the Court noted that Article I, Section 7 of the Tennessee Constitution, which prohibits unreasonable searches and seizures, may afford citizens of Tennessee greater protection than the Fourth Amendment of the United States Constitution. Id. at 106; see also State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989); Miller v. State, 584 S.W.2d 758 (Tenn. 1979). In Downey, our Supreme Court adopted the balancing test provided in

<u>Michigan v. Sitz</u>, 496 U.S. 444 (1990) "as the appropriate constitutional standard, so that when a seizure occurs, an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field, and the seizure is carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." <u>Downey</u>, 945 S.W.2d at 110. The Court held "that the use of a sobriety roadblock, although a seizure, can be a reasonable seizure under the Tennessee Constitution, provided it is established and operated in accordance with predetermined operational guidelines and supervisory authority that minimize the risk of arbitrary intrusion on individuals and limit the discretion of law enforcement officers at the scene." <u>Id.</u> at 104.

The Court outlined several aspects of the roadblock in <u>Downey</u> that were consistent with constitutional standards:

1. Cars traveling in both directions were stopped.

2. When the traffic became congested, motorists were permitted to pass through the roadblock.

3. The discretion of the individual officers at the scene was limited as to what motorists were to be stopped.

4. The roadblock was conducted in a safe and visible area and consisted of uniformed officers and marked patrol cars with flashing blue lights.

<u>Id.</u> at 110. However, several aspects of the roadblock in <u>Downey</u> were not established and operated in a manner consistent with Article I, Section 7 of the Tennessee Constitution:

1. The decision to set up a roadblock was made by an officer in the field.

2. The location for the roadblock and the procedure to be used in operating the roadblock were matters left to the discretion of an officer in the field.

3. No supervisory authority was sought or obtained, and no administrative decisions were made with regard to these critical factors.

<u>Id.</u>

Our Supreme Court also observed that two factors present in <u>Downey</u> indicated a lack of administrative or supervisory decision-making. First, the presence or absence of publicity surrounding the roadblock is one factor that can be used in assessing the reasonableness of the roadblock. <u>Id.</u> at 111 n.8. Second, the Court reasoned that the absence of supervisory or administrative decision-making may have contributed to creating an issue regarding the purpose of the roadblock. It noted that the stated purpose for the roadblock in <u>Downey</u> was to check drivers' licenses. However, the record revealed that the actual purpose was to detect alcohol-impaired motorists. The Court emphasized that "this discrepancy in the proof is a reflection of the overall failure by law enforcement officers to establish this roadblock in a manner consistent with administrative and supervisory oversight." <u>Id.</u> at 111. Thus, the Court concluded that this discrepancy regarding the purpose of the roadblock was also a factor that weighed against the reasonableness of the roadblock.

IV. ANALYSIS

We now address the aspects of the roadblock of the present case. First, the roadblock in this case was conducted in a remote area just inside the Roane County line off of Interstate 40. Therefore, on the day in question, only motorists traveling eastbound on Interstate 40 were affected by the roadblock.

Second, Deputy Worley testified that he would decide the time and location of the roadblock and then notify the sheriff of his plan. He further testified that in all the times that he had conducted a roadblock, the sheriff had never told him that he could not operate a roadblock when he notified him of his plan. Deputy Worley also testified that he was instrumental in drafting the department's guidelines for conducting a sobriety roadblock. Therefore, it is clear that Deputy Worley, as an officer in the field who is assigned to the Narcotics Department of the Roane County Sheriff's Department, not only makes the decision to establish a roadblock but also decides the location and the time

for operating the roadblock. The sheriff merely "rubber stamps" Deputy Worley's decision. The sheriff, who has always approved Worley's roadblocks, never decided himself whether to establish a roadblock, the location of a roadblock, or the time for operating the roadblock. Worley admitted that he would decide to establish a roadblock and would telephone the sheriff or page him to notify him that he, Worley, was planning to set up a roadblock. In fact, in the state's brief, it asserts that "Deputy Worley stated that each time a roadblock was <u>planned</u>, department policy required him to notify either the sheriff or the chief deputy sheriff for approval." (emphasis added). Thus, Deputy Worley, not the sheriff, planned the roadblock and then the sheriff gave his approval, as he had always done. Deputy Worley testified that on the day in question, May 18, 1996, he determined where to establish the roadblock, when to set it up, and then notified the sheriff on his pager that he was setting up the roadblock on the Airport Road exit ramp.

Third, as the Court in <u>Downey</u> observed, the failure to publicize the roadblock and the possible "pretext" or "subterfuge" involved provide evidence of a lack of administrative or supervisory decision-making. Deputy Worley testified that the roadblock in this case had not been publicized. Furthermore, he testified that the purpose of the roadblock was to check for alcohol-impaired or drug-impaired drivers. However, the record strongly indicates that the primary purpose of the roadblock was to detect motorists who might be transporting drugs.

Deputy Worley is assigned to the Narcotics Department of the Roane County Sheriff's Department. He testified that money received from drug forfeitures pays for his salary, his drug-sniffing dog and the maintenance of the dog, the D.A.R.E. wagon, his patrol car, and any other operational expenses associated with his office. Deputy Worley further testified that the Roane County

Sheriff's Department did not have a mobile intoximeter at the time of this roadblock and still did not have one.

Fourth, Deputy Worley and jailer Brock were the only two individuals conducting the roadblock involving the appellant, which Deputy Worley testified was typically the case. Worley was in his uniform and had a gun on his hip. Brock also had a gun. The only vehicles present were Deputy Worley's unmarked car, which is solid white with tinted windows, that had the D.A.R.E. wagon attached to it. The D.A.R.E. wagon was marked with the Roane County Sheriff's Department emblem. Brock's car has light bars, stripes, and stars on the door. The location of the roadblock in this case was a remote area just inside the Roane County line at the end of an exit ramp off of Interstate 40. A motorist traveling on the exit ramp could see the roadblock between 100 and 120 yards before having to stop. Despite the state's assertion, the record contains no evidence that either one of the two cars present employed flashing blue lights during the roadblock.

## V. CONCLUSION

We conclude that the roadblock in this case was not established and operated in a manner consistent with Article I, Section 7 of the Tennessee Constitution as outlined in State v. Downey. We, therefore, need not address the appellant's second issue. Accordingly, we respectfully reverse the judgment of the trial court and dismiss the charge against the appellant.

VI.  APPENDIX A

December 8, 1994


ROANE COUNTY SHERIFF'S DEPARTMENT

POLICY AND PROCEDURE FOR SETTING UP SOBRIETY CHECK  POINTS


SUBJECT:  SOBRIETY CHECK  POINTS

I.  PURPOSE:

The purpose of this order is to establish policy, procedures and regulations for the commissioned members of the Roane County Sheriff's Dept. concerning the captioned subject.

II. POLICY:

The policy is to remove impaired drivers from our highways as safely as possible with due regard to the safety of the public and the officer(s).

III. INSTRUCTIONS FOR SOBRIETY CHECK  POINTS:

1.  Check points will be set up only at the direction of high level administrative officials.

2. The location and/or situqtions [sic] encountered will determine the plan for which cars to stop. It must be on a systematic, non-random basis. Such as stopping every car, every second car, etc.

3. If an approaching driver turns off or makes a U-turn in a safe manner, no action will be taken against them.

4. Each car will be approached and the driver informed that you are conducting this check point looking for persons driving under the influence of alcohol or drugs. This will be done in a courteous and professional manner.

5. The stop should be of brief duration.

6. If no signs of intoxication are found or no indication of contraband, the driver should be allowed to proceed.

7. If the officer observes signs of intoxication or observes contraband in the vehicle, the driver should be directed to the side for further investigation. They should be moved out of the flow of traffic to avoid traffic hazards, congestion and delay of those drivers following.

8. After moving out of the flow of traffic any driver demonstrating signs of intoxication, the driver will be given the field sobriety test. If they satisfactorily pass the field sobriety test, they will be released. If the person fails to pass the field sobriety test, the officer is to obtain their operator's license and then offer them the Breath Alcohol Test. Any driver who registers .10 on the breath alcohol test will be arrested and booked for DUI. Those drivers who show signs of intoxication but do not register .10 on the breath alcohol test may be released or charged if their actions indicate that they cannot drive in a safe manner. This will be done at the discretion of the ranking officer on the scene.

9. If the officer has reasonable suspicion, supported by specific and articulable facts to believe that contraband is present, regardless of the fact that a roadblock was being used, then the driver may be asked to sign a consent to search. Possible use of canine detectors may be employed in these vehicle searches.

10. If a subject is arrested he/she may sign a release form authorizing the officer to leave his car at the scene in a safe location if possible or the car will be towed by a wrecker of driver's choice or next scheduled towing serivce [sic] on the County rotation. Only exceptions to this will be drug seizures which will be towed by one of the County's pre-determined inpound [sic] services.

_____
David B. Haggard
Sheriff of Roane County

_____
PAUL G. SUMMERS, Judge


CONCUR:


_____
JOHN H. PEAY, Judge


_____
CORNELIA A. CLARK, Special Judge