IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 17, 2003

## STATE OF TENNESSEE v. GREGORY L. ANDERSON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002 T 50      Frank G. Clement, Jr., Judge**

_____

**No. M2002-02289-CCA-R3-CD - Filed October 31, 2003**

_____

The defendant was found guilty of driving under the influence, fifth offense. The defendant filed a motion to suppress the evidence obtained as a result of the roadblock, contending that the officer lacked reasonable suspicion to detain the defendant, the roadblock guidelines are unconstitutional, and the police did not substantially comply with the roadblock guidelines. The defendant also made a motion in limine to keep out testimony regarding the defendant's use of a racial slur. Both motions were denied. We affirm the judgment of the trial court as to all issues.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Brent Horst, Nashville, Tennessee, for the appellant, Gregory L. Anderson.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and James D. Sledge, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 20, 2001, the defendant, Gregory L. Anderson, was arrested at a sobriety checkpoint for driving under the influence and violation of the implied consent law. A preliminary hearing was held on January 3, 2002. The case was bound over to the Grand Jury, and the defendant was indicted. The defendant filed a motion to suppress all of the evidence obtained from the stop, contending that the roadblock was illegal. A suppression hearing was held, and the motion was denied. Following a jury trial on July 15, 2002, the defendant was found guilty of driving under the influence, fifth offense. The defendant filed a motion for new trial and a motion to reconsider the motion to suppress. The motions were denied, and the defendant timely filed his notice of appeal. He contends on appeal that the trial court erred in denying (1) his motion to suppress and (2) his motion in limine regarding a racial slur used by the defendant.

**Facts**

On October 20, 2001, between midnight and 12:30 a.m., the defendant encountered a sobriety checkpoint being conducted by the Tennessee Highway Patrol on Linbar Drive in Davidson County. Trooper Bennie Jennings, Jr. testified that the officers present at the roadblock were wearing reflective vests, orange cones were in place, blue lights were flashing, numerous marked police vehicles were on the scene, and the location was in a well lit, visible area. The roadblock site, which was on a list of pre-approved locations, was chosen in advance by his supervisors. The media was notified in advance of the roadblock. The officers were instructed to stop all cars in both directions, unless traffic became congested.

As the defendant proceeded through the roadblock, his vehicle was approached by Trooper Jennings. Trooper Jennings noticed one passenger in the defendant's vehicle. Trooper Jennings testified at trial that he detected the odor of alcohol coming from the defendant's vehicle. He asked the defendant if he had been drinking, to which the defendant responded that he had consumed two beers. Trooper Jennings then instructed the defendant to pull into a parking lot next to the roadblock area. He stated that the defendant had to make a left turn in order to get into the parking lot. The defendant then made another left turn into a parking space. A private investigator testified that the distance from where the defendant was initially stopped to the parking space was approximately 300 feet. Trooper Jennings conceded on cross-examination that the defendant made proper turns and was not driving erratically.

Trooper Jennings stated that he walked alongside the defendant's vehicle as he drove approximately two to three miles per hour into the parking lot. He had his hand on the defendant's door and was talking to him while he drove into the parking lot. Trooper Jennings testified that as he and the defendant were talking, he could smell alcohol coming from the defendant's mouth. The defendant parked where instructed and exited his vehicle. Trooper Jennings stated that the defendant was unsteady and had to lean on his vehicle to gain his balance. The defendant "fumbled excessively" when getting out his license. Trooper Jennings asked the defendant to perform some field sobriety tests, and he agreed. As the defendant walked toward the back of the vehicle to perform the tests, he was staggering and unsteady on his feet. Trooper Jennings began the tests by demonstrating the one-leg stand. He testified that while he was instructing the defendant on how to perform the test, the defendant was not paying attention and not following directions. Trooper Jennings stated that while attempting to perform the one-leg stand, the defendant kept putting his foot down and was swaying from side to side. The defendant lost his balance, and the trooper grabbed him to keep him from falling. Trooper Jennings said that he did not attempt to administer any more tests, because he was afraid that the defendant would hurt himself. The defendant refused to take a breath test. Trooper Jennings placed the defendant under arrest for driving under the influence and put him in the backseat of his patrol car.

Trooper Jennings testified that while the defendant was in the car, he became extremely belligerent. The defendant started yelling, cursing, and spitting on the partition in the car. As Trooper Jennings continued to try to get information from the defendant, he continued to be

belligerent and stated to the trooper that he was being arrested only because he was white. Trooper Jennings is African-American. The trooper testified that the defendant called him a nigger. The defendant continued yelling and spitting, and the trooper removed him from the car.

Another trooper, Isreal Silva[1], who was also present at the scene, noticed that the defendant was being belligerent. Trooper Silva came over to assist Trooper Jennings. Silva testified that the defendant had the smell of alcohol on his breath, bloodshot eyes, and slurred speech. He stated that the defendant had to lean on the car to gain his balance. He also testified that he heard the defendant use a racial slur in reference to Trooper Jennings.

Reginald McCroskey, a friend and employee of the defendant, testified that the defendant had been at the witness's house from about 6:00 to 7:00 p.m. until around midnight on the night the defendant was arrested. He saw the defendant consume from two to four beers. In his opinion, the defendant was not intoxicated when he left his house around midnight. Mr. McCroskey stated that he had never heard the defendant use racial slurs.

Keith Raymond Crowder, another friend of the defendant, testified that he was also with the defendant during the hours before the defendant was arrested. He saw the defendant drink approximately two beers during the entire evening. He stated that he had seen the defendant intoxicated on prior occasions, and he did not think that the defendant was intoxicated when he left the house on the night that he was arrested. He also testified that he had never heard the defendant use racial slurs.

The jury found the defendant guilty of driving under the influence, fifth offense.

## Analysis

The defendant contends on appeal that the trial court erred in denying (1) his motion to suppress and (2) his motion in limine regarding a racial slur used by the defendant.

## I. Motion to Suppress

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, the application of the law to the facts found by the trial court are questions of law that this Court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). Absent a showing by the defendant that the evidence preponderates against the judgment of the trial court, this Court must defer to the ruling of the trial court. State v. Cribbs, 967 S.W.2d 773, 795 (Tenn.1998).

---

[1] The witness is referred to as Israel in the transcript. However, on the witness stand, he spelled his name Isreal.

### A. No probable cause or reasonable suspicion

The defendant contends that the officer did not have reasonable suspicion or probable cause to pull the defendant over for further investigation. He argues that the officer could not determine whether the smell of alcohol was coming from the defendant or the passenger. Not only did the officer detect the odor of alcohol, the defendant admitted that he had been drinking. While this did not give the officer probable cause to arrest the defendant for DUI, it was enough to "establish the right of the officer to *briefly detain* the defendant at the scene and administer field sobriety tests or otherwise ascertain defendant's state of sobriety." State v. Jashua Shannon Sides, No. E2000-01422-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 364, *11 (Tenn. Crim. App. at Knoxville, May 16, 2001) (citing State v. Yeargan, 958 S.W.2d 626, 633 (Tenn. 1997)). The defendant's argument on this issue is without merit.

### B. General Order 410-1 is unconstitutional due to paragraph III C 5

The defendant also contends that General Order 410-1, establishing the guidelines for sobriety checkpoints, is unconstitutional because of paragraph III C 5, which states: "Only upon observing a noticeable sign of possible intoxication or other offense will further inquiry be warranted." In developing the constitutional guidelines for roadblocks in Tennessee, our supreme court relied on Michigan v. Sitz, 496 U.S. 444 (1990). See Downey, 945 S.W.2d at 107-10. In Sitz, all vehicles were stopped and the drivers were checked for signs of intoxication. Sitz, 496 U.S. at 447. If the officer detected possible intoxication, the vehicle was pulled into a pre-determined location for further inquiry. Id. The facts in this case are almost identical to Sitz. Paragraph III C 5 of the General Order is not unconstitutional in allowing officers to briefly detain motorists who exhibit signs of possible intoxication. The defendant's argument on this issue is without merit.

### C. Police did not follow guidelines

The defendant contends that the sobriety checkpoint was illegal because it did not substantially comply with the Department of Safety guidelines. The procedures for conducting sobriety checkpoints are set forth in Tennessee Department of Safety General Order 410-1. Specifically, the defendant argues that the roadblock did not comply with paragraph III A 1 and paragraph III A 2 of General Order 410-1.

#### 1. Roadblock site not established based on knowledge

General Order 410-1 paragraph A 1 provides: "Individual site selections will be based on the knowledge of alcohol-related crashes and the knowledge of DUI arrests in a particular area. Documentation of site selections will be maintained on file by the District/Division Captain." The defendant contends that the State provided no proof or testimony regarding this issue. Therefore, the roadblock was illegal.

The trial court found that the list of pre-approved sites showed that some thoughtfulness and thoroughness went into selecting the sites. The court found that the fact that this site was on the pre-approved list showed that they most likely reviewed the appropriate data in selecting the site. The inference drawn by the trial court is reasonable. The Tennessee Supreme Court has held "that the use of a sobriety roadblock, although a seizure, can be a reasonable seizure under the Tennessee Constitution, provided it is established and operated in accordance with predetermined operational guidelines and supervisory authority that minimizes the risk of arbitrary intrusion on individuals and limit the discretion of law enforcement officers at the scene." State v. Downey, 945 S.W.2d 102, 104 (Tenn. 1997). At the suppression hearing, the State bears the burden of showing that the seizure was reasonable. State v. Cross, 700 S.W.2d 576 (Tenn. Crim. App. 1985). It appears from the record that the intent behind this section of the guidelines was complied with. This section of the guidelines is obviously concerned with constitutional limits on the "unfettered discretion of officers in the field" in conducting roadblocks. See Downey, 945 S.W.2d at 104 (quoting Brown v. Texas, 443 U.S. 47, 50-51(1979)). Officer Jennings testified that the roadblock site was selected by his superiors, the location was on the list of pre-approved roadblock sites, and there were numerous senior officers present. We hold that the trial court did not err in finding that the sobriety checkpoint in this case substantially complied with paragraph III A 1 of the guidelines.

### 2. No adequate warnings site was ahead

The defendant also contends that the roadblock did not substantially comply with paragraph III A 3 of the guidelines. The pertinent section states: "The location must give motorists adequate prior warning that a roadblock is ahead." The defendant argues that there were no warning signs visible at the roadblock site. Trooper Jennings testified that he saw illuminated signs at the scene, but he did not actually see them in place. The defendant testified that he did not see any signs. The trial court found that since the signs were present at the scene, they were probably used.

The record before us does not preponderate against the trial court's finding on this issue. Even if there were no signs displayed at the scene, it would not be dispositive of whether there was substantial compliance with the adequate warnings requirement. While Downey did list adequate warnings as one of the factors in determining the constitutionality of a roadblock, the court went on to say that no single factor is dispositive of the issue. Downey, 945 S.W.2d at 110. The record indicates that there was adequate warning to approaching motorists even without any signs. Trooper Jennings testified that the officers were wearing reflective vests, orange cones were in place, blue lights were flashing, numerous marked police vehicles were on the scene, and the location was in a well-lit, visible area. The trial court did not err in finding that the roadblock substantially complied with the adequate warnings requirement.

Affording the State the strongest legitimate view of the evidence and all legitimate inferences that may be drawn from it, we hold that the evidence does not preponderate against the ruling of the trial court denying the defendant's motion to suppress.

## II. Motion in Limine Regarding Racial Slur

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Once the court concludes the evidence is relevant, the court should exclude the evidence if its probative value is substantially outweighed by its prejudicial effect. Tenn. R. Evid. 403; State v. James, 81 S.W.3d 751, 757 (Tenn. 2002). A trial court's decision as to the relevance of evidence under Rule 401 will be reversed only upon a showing of abuse of discretion. State v. Powers, 101 S.W.3d 383, 395 (Tenn. 2003).

The defendant argues that testimony of his use of the word "nigger" in referring to Trooper Jennings was not relevant to his level of intoxication. The State contends that it was relevant to show his level of intoxication in light of his use of such an inflammatory and derogatory word in front of his passenger and the trooper, both of whom are African-American. Mr. McCroskey and Mr. Crowder, friends of the defendant, both testified that they had never heard the defendant use any racial slurs. The racial slur was relevant to show the defendant's belligerence and that he was impaired. The trial court did not abuse its discretion in finding that testimony of his use of the racial slur was relevant to show the defendant's level of intoxication.

The defendant also argues that the probative value of the testimony concerning his use of the racial slur was substantially outweighed by unfair prejudice. We certainly agree with the defendant and the trial court that the racial slur used by the defendant in referring to Trooper Jennings is inflammatory. While this Court deplores the defendant's use of such a word, it was the defendant's choice to say it. In the context that the racial slur was used, it was clearly probative of the defendant's state of mind at the time. As the State points out, the defendant's passenger and Trooper Jennings are African-American. The testimony goes to show that the defendant was not in control of his faculties and used poor judgment, more probable than not influenced by his use of alcohol. We hold that the probative value of the testimony concerning the defendant's use of a racial slur was not substantially outweighed by the danger of unfair prejudice.

## Conclusion

Based upon our analysis, we affirm the judgment of the trial court denying the defendant's motion to suppress and his motion in limine regarding the racial slur.

_____
JOHN EVERETT WILLIAMS, JUDGE