# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 18, 2012 Session

## STATE OF TENNESSEE v. JOHNNY E. MONK

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S57197      Robert H. Montgomery, Jr., Judge**

---

**No. E2011-00935-CCA-R3-CD - Filed December 12, 2012**

---

Following a bench trial, the trial court convicted the Defendant, Johnny E. Monk, of violation of the Habitual Motor Vehicle Offender Act, violation of the vehicle registration law, and violation of the financial responsibility law. The trial court sentenced the Defendant, as a multiple offender, to a four year sentence to be served in confinement. On appeal, the Defendant argues that the trial court erred when it: (1) denied his motion to suppress the evidence from the traffic stop as an illegal search and seizure; and (2) allowed evidence of unindicted criminal behavior contrary to Tennessee Rule of Evidence 404(b). After a thorough review of the record and relevant law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., joined.

K. Justin Hutton, Blountville, Tennessee (on appeal), and David Mullins, Bristol, Tennessee (at trial), for the appellant, Johnny E. Monk.

Robert E. Cooper, Jr., Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Barry P. Staubus, District Attorney General; Amber Massengil, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I. Facts

This case arises from the stop of the Defendant's vehicle during a driver's license checkpoint, which resulted in the Defendant being indicted for violating the Habitual Motor

Vehicle Offender Act, the vehicle registration law, and the financial responsibility law. The record reflects that the Tennessee Highway Patrol conducted a driver's license checkpoint on State Road 44, on August 28, 2009, between 8:00 p.m. and 10:00 p.m. At this checkpoint, the Defendant's vehicle was stopped, and a trooper observed the Defendant towing a vehicle that did not have tail lights illuminated as required by law. Upon further inquiry, the trooper learned that the Defendant was also unlicensed and could not provide proof of insurance. The Defendant filed a motion to suppress all evidence seized as a result of his stop during the driver's license checkpoint, which he argued was unconstitutional. After a hearing, the trial court denied the Defendant's motion. Thereafter, a bench trial was held, and the trial court found the Defendant guilty of a violation of the Habitual Motor Vehicle Offender Act, a violation of the vehicle registration law, and a violation of the financial responsibility law.

## A. Suppression Hearing

The trial court held a hearing on the Defendant's motion to suppress, and the parties presented the following evidence: Sergeant Ken Wright, a Tennessee Highway Patrol officer, testified that his work duties included setting up driver's license checkpoints. Sergeant Wright said that he requested authorization to set up a driver's license checkpoint on August 28, 2009, from 8:00 p.m. until 10:00 p.m. located at "State Route 44 at Webb Store." He identified the general order granting his request for the driver's license checkpoint at issue in this case.

Sergeant Wright explained the process and protocol required in order to conduct a driver's license checkpoint. Once a trooper identified a location as a potential site for a roadblock, Sergeant Wright would visit the site with the trooper. Sergeant Wright then would take a lieutenant to the site for approval, and the lieutenant would forward the paperwork to the district captain, requesting approval of the location. If the location met the criteria and was approved, Sergeant Wright would draft paperwork requesting approval for a roadblock at the pre-approved location for a specific time and date. This request would have to be approved by a lieutenant and the captain.

Sergeant Wright explained that some of the criteria considered in approving a location related to officer and driver safety, such as sufficient lighting, adequate advanced warning signs, and sufficient room to safely move vehicles out of the line of traffic in the event further inquiry was needed. Sergeant Wright testified that, in preparation for the August 28, 2009 roadblock, he posted signs in advance of the roadblock indicating that a drivers license checkpoint was ahead and ensured that the intersection at this location was well lit. He further stated that the owner of the Webb Store, a store located at the intersection, granted permission to use their parking lot, which provided adequate space to pull vehicles out of the roadway for further inquiry if necessary.

Sergeant Wright testified that he notified the media in advance of all roadblocks. Sergeant Wright identified the media notification press release for the August 28, 2009 checkpoint that was faxed to the Kingsport Times and the news media on August 17, 2009. Sergeant Wright testified that, after the August 28, 2009 driver's license checkpoint on State Route 44, he prepared and submitted an activity report.

Sergeant Wright testified that between August 2009 and August 2010 the highway patrol handled twenty-one "crashes" on State Route 44. The state-compiled statistics also revealed that between the years 2005 and 2009 there were 909 car "crashes" in Sullivan County. Of those 909, 25.8% involved a driver who was charged with a driver's license violation. Sergeant Wright testified that state statistics for 2008 indicated that 13.9% of the driver's involved in fatal crashes had an invalid license, a revoked license, a suspended license, or no license.

Trooper Robert Johnson, a Tennessee Highway Patrol officer, testified that he was present at the driver's license checkpoint located on State Route 44 on August 28, 2009. Trooper Johnson said that, other than "a few street lights," there was not much artificial lighting in the area, so troopers set up spotlights and illuminated trooper vehicle headlights in the area. Safety precautions employed that night included signs in advance of the roadblock, troopers wore uniforms with reflective vests, and they carried flashlights. Trooper Johnson testified that the required procedure at the checkpoint was to stop every vehicle.

Trooper Johnson testified that the Defendant drove toward the checkpoint in a pickup truck that was pulling another vehicle. The vehicle the Defendant was pulling did not have any lights illuminated, which was a violation at night.

After hearing this evidence, the trial court denied the Defendant's motion to suppress.

## B. Trial

The Defendant waived his right to a jury trial, and, at a bench trial on the Defendant's charges, the parties presented the following evidence: Trooper Robert Johnson, a Tennessee Highway Patrol officer, testified that he participated in the driver's license checkpoint held in Sullivan County, Tennessee, on August 28, 2009. Trooper Johnson said that the checkpoint was located at the intersection of State Route 44, Possum Creek, and Old River Pike, which was a four-way intersection. Trooper Johnson said that the checkpoint was conducted at night; therefore, all participating officers wore reflective vests and carried flashlights with glowing traffic wands at the end of the flashlight. In describing the location of the checkpoint, Trooper Johnson said that all of the highway patrol vehicles were marked vehicles and had their headlights illuminated. In addition, spotlights were pointed at the road

to illuminate the driver's license checkpoint area.

Trooper Johnson testified that troopers were stationed at all four points of the intersection and stopped every vehicle to inspect drivers' licenses. Trooper Johnson first noticed the Defendant's 1990 Chevy pickup truck because it stopped within a quarter of a mile of the checkpoint on State Route 44. Trooper Johnson motioned for the pickup truck to move forward and noticed that a vehicle behind the pickup truck had "flashers on." Trooper Johnson observed a vehicle being towed by the pickup truck that did not have any lights illuminated, as required by law. Trooper Johnson said that he later learned that the vehicle being towed was inoperable, and the Defendant was taking it to his home to repair it.

Trooper Johnson testified that he approached the driver of the pickup truck, the Defendant, and asked to see the Defendant's driver's license. The Defendant told the trooper that he had only an ID because his driver's license was revoked for DUI. The Defendant also could not produce insurance for the Chevy truck he was driving. Upon further investigation, Trooper Johnson learned that the tag on the Chevy truck belonged to a 1989 GMC pickup truck.

On cross-examination, Trooper Johnson agreed that the Defendant was not driving "erratic[ly]." On re-direct examination, Trooper Johnson agreed that, absent a checkpoint, he could have stopped the Defendant based upon the fact that the Defendant violated the law by towing a vehicle without illuminated tail lights.

Tommy Kerns, the Sullivan County Circuit Court Clerk, testified that he stored and maintained court records. Kerns provided the Defendant's criminal file pursuant to a subpoena and confirmed that the file contained a judgment form entered October 8, 1993, that was still in effect at the time of the trial, declaring the Defendant a Habitual Motor Vehicle Offender.

## II. Analysis

On appeal, the Defendant argues that the trial court erred when it: (1) denied his motion to suppress the evidence from the traffic stop as an illegal search and seizure; and (2) allowed evidence of unindicted criminal behavior contrary to Tennessee Rule of Evidence 404(b). The State responds that the roadblock was conducted in a manner that met constitutional requirements and the trial court's admission of testimony regarding the Defendant's violation of the light law does not constitute plain error.

### A. Motion to Suppress

The Defendant contends that the roadblock pursuant to which police stopped his vehicle was unconstitutional and that, as a result, the stop of his vehicle was unlawful and requires suppression of the evidence supporting his convictions. The State responds that the trial court properly admitted the evidence because the roadblock was constitutional. We agree with the State.

The standard of review for a trial court's suppression hearing mandates that its findings of fact "will be upheld unless the evidence preponderates otherwise." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Id.* Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution and conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* This court, however, reviews a trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. *Odom*, 928 S.W.2d at 22-23; *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

Both the United States and Tennessee Constitution protect against unreasonable searches and seizures. The Fourth Amendment of the U.S. Constitution proclaims that "the right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." Article 1, Section 7 of the Tennessee Constitution provides "people shall be secure in their persons, houses, and papers and possessions, from unreasonable searches and seizures." Tenn. Const. art. I, § 7. Generally, to search a person's property, a warrant is needed. *Yeargan*, 958 S.W.2d at 629. Evidence seized as a result of a warrantless search of a person's property, therefore, "is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Id.* A trial court accordingly presumes that a warrantless search or seizure is unreasonable unless the State demonstrates that one of the exceptions to the warrant requirement applies to the search. *Id.*

Seizures conducted pursuant to a police roadblock are sometimes excepted from the warrant requirement. *See U.S. v. Martinez-Fuerte*, 428 U.S. at 543, 556-57 (1976); *State v. Downey*. 945 S.W.2d 102 (Tenn. 1997). The United States Supreme Court has held that, under some circumstances, suspicionless temporary checkpoints to search for drunk drivers are reasonable and, thus, comply with the Fourth Amendment. *See Michigan v. Sitz*, 496 U.S. 444, 450-55 (1990). The Supreme Court has explained that the constitutionality of

seizures that are less intrusive than traditional arrest, such as a roadblock stop, depends upon "a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with the individual liberty." *Brown v. Texas*, 443 U.S. 47, 50 (1979).  A reasonable balance of these considerations requires that the checkpoint be "based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." *Id.*

When the Tennessee Supreme Court interpreted Article 1, Section 7 of the Tennessee State Constitution in the context of police roadblocks, it adopted the test used in *Brown v. Texas* and *Michigan v. Sitz* to determine whether a police roadblock complied with the Fourth Amendment.  *See Downey*, 945 S.W.2d at 110.  Therefore, in Tennessee, roadblock seizures, which allow officers to stop persons whose conduct is "ordinary, innocent, and free from suspicion," are in some instances constitutional.  *Id.* at 104.  The constitutionality of roadblock seizures, in general, depends upon a balancing of: (1) the gravity of public interest served by the seizure; (2) the degree to which the seizure advances that interest; and (3) the severity of the interference with individual liberty.  *Id.* at 110 (citing *Sitz*, 496 U.S. at 453).

While the decision in *Downey* addressed only sobriety checkpoints, our Supreme Court, in *State v. Hicks*, affirmed that the test adopted in *Downey* also applied to cases challenging driver's license checkpoints.  The *Hicks* Court stated that the preliminary consideration is the State's justification for maintaining a roadblock and, in providing a justification for a roadblock, the State must do more than "rely upon its general interest in maintaining the integrity of its drivers' licensing scheme." 55 S.W.3d 515, 530 (Tenn. 2001).  If the State has done so, we will examine the degree to which the roadblock advances the public interest and the severity of the roadblock's interference with an individual's liberty or privacy.  *Downey*, 945 S.W.2d at 107-08; *Hicks*, 55 S.W.3d at 526.

With respect to the last consideration, a court must determine whether the sobriety checkpoint was "established and operated in accordance with predetermined operational guidelines and supervisory authority that minimize the risk of arbitrary intrusion on individuals and limit the discretion of law enforcement officers at the scene." *Id.* at 104.  In order for a checkpoint to have an adequate limit on officer discretion: (1) the decision to set up the roadblock in the first instance must not have been made by the officer or officers actually establishing the roadblock; and (2) the officers on the scene must not have discretion to select the procedures to be used in operating the roadblock.  *State v. Hayes*, 188 S.W.3d 505, 516 (Tenn. 2006) (citing *Hicks*, 55 S.W.3d at 533).  Therefore, in all cases, the State must show that the field officers' superior officer chose the time and location of the checkpoint and that the field officers operated the checkpoint in accord with "neutral

standards previously fixed by administrative decision or regulation." *Id*. Inadequate limitation of field officer discretion necessarily invalidates the checkpoint stop. *Id*.; *see also State v. Sherman Boddie*, No. W2007-00685-CCA-R3-CD, 2007 WL 4322159, *3 (Tenn. Crim. App., at Jackson, Dec. 11, 2007), *no Tenn. R. App. P. 11 application filed*.

A court must also determine whether the guidelines and supervisory authority properly limit the risk of arbitrary intrusion. *Downey*, 945 S.W.2d at 104. The following factors indicate whether a checkpoint minimizes the risk of arbitrary intrusion: (a) whether cars traveling in both directions were stopped, unless traffic congestion requires permitting some motorists to pass through; (b) whether adequate safety precautions, such as warning approaching motorists of the roadblock and stopping cars in a safe and visible area, were taken; (c) whether uniformed officers with marked patrol cars with flashing emergency lights conducted the checkpoint; and (d) whether the public received advance publicity of the checkpoint, separate from, and in addition to, any warnings given approaching motorists. *Hicks*, 55 S.W.3d at 533. Not every factor, however, need weigh in favor of the State in order to uphold a roadblock. *Downey*, 945 S.W.2d at 110. In fact, "the absence of any of these factors [that indicate whether the roadblock limited arbitrary intrusion] does not necessarily invalidate a roadblock . . . ." *Hicks*, 55 S.W.2d at 533. The chief issue remains whether the checkpoint was established and operated "in a constitutionally reasonable manner that minimized the intrusion on individuals and limited the discretion afforded to officers at the scene." *Id*.; *Downey*, 945 S.W.2d at 110.

In support of its conclusion that the roadblock was established in a manner consistent with constitutional requirements, the trial court found that the approval for and establishment of the checkpoint was done according to Tennessee Highway Patrol protocol and not at an officer's discretion. The trial court made findings that the checkpoint required administrative oversight and approval of the location, it met criteria requiring the site to either have a high crash or high violation history, advanced notification of the date and location was provided to the media, and the checkpoint was planned and conducted with safety in mind. The trial court further found that a set procedure was in place, which required troopers to stop all vehicles passing through the intersection. The trial court also considered state statistics indicating that 25.8 percent of the accidents occurring in Sullivan County between 2005 and 2009 involved individuals with license violations. Having concluded that the checkpoint complied with the *Downey* requirements, the trial court denied the Defendant's motion to suppress the evidence obtained as a result of the stop of his vehicle during a driver's license checkpoint.

The Defendant attacks only the first consideration for determining the constitutionality of a roadblock, arguing that the State did not present a sufficient compelling interest to establish the roadblock. Because that is only the first of the three factors we balance in our

review, we address this issue as well as the other two factors.

### 1. Compelling State Interest Served by the Roadblock

The Defendant argues that the State did not offer a compelling state interest sufficient to justify the roadblock. The State responds that the State met its burden in showing a compelling interest in protecting Tennessee's motorists from the dangers posed by unqualified drivers.

The *Hicks* Court held that the "presence of a sufficiently compelling interest is necessary under Article I, section 7 before an examination of the other aspects of a roadblock may proceed." *Hicks*, 55 S.W.3d at 527. As we earlier noted, the State may not merely rely on its general interest in maintaining highway safety. *Id.* at 530. It must produce "some proof of the need to curb a substantial and imminent threat to the safety of motorists on public roads distinctly resulting from the conduct of unlicensed drivers.

The State provided statistics indicating that 13.9% of all fatal crashes statewide in 2008 involved drivers with revoked licenses, suspended licenses, or no license. Additional statistics revealed that 25.8% of the drivers involved in accidents between 2005 and 2009 in Sullivan County were charged with driver's license related charges. The Defendant complains that the State did not break down the charges to categories indicating if the driver was cited for driving on a revoked license, driving on a suspended license, or, as is the case here, driving after being declared a Habitual Motor Vehicle Offender. We do not think this distinction undermines the proof that approximately one fourth of the accidents in Sullivan County involved unlicensed drivers. The State has provided statistics in support of its contention that the roadblock is related to maintaining highway safety. These statistics provide individualized suspicion and support the conclusion that unlicensed drivers are an imminent threat to the safety of motorists on the public roads in Tennessee and, specifically, in Sullivan County. We conclude that the record does not preponderate against the trial court's finding that the State demonstrated a sufficiently grave public concern.

### 2. The Degree to Which the Public Concern is Furthered

Next, we consider the degree to which the public concern is furthered by the road stop. One way in which unlicensed drivers can reasonably be deterred by roadblocks is advanced public notice of the location and time of the roadblocks. "Advanced publicity is one key to ensuring this awareness." *Hicks*, 55 S.W.3d at 531. In the present case, Sergeant Wright testified that he provided the local newspaper and media of the time, date, and location of the checkpoint on August 17, 2009, almost two weeks prior to the August 28, 2009 checkpoint.

The State also provided the Checkpoint Activity Report, which documented all citations and arrests during the checkpoint. The report indicates that one citation was issued for "Revoked/Suspended DL," and three citations were issued for "other" driver's license related violations among other citations issued that night. This evidence demonstrates that there was some meaningful link between the establishment and the achievement of the State's compelling interest. Therefore, we conclude that this proof weighs in favor of a finding that the roadblock was constitutionally reasonable.

### 3. The Severity of the Interference with an Individual's Liberty

As we previously stated, with respect to this final consideration, a court must determine whether the sobriety checkpoint was "established and operated in accordance with predetermined operational guidelines and supervisory authority that *minimize the risk of arbitrary intrusion* on individuals and *limit the discretion of law enforcement officers* at the scene." *Downey*, 945 S.W.2d at 104 (emphasis added).

The *Downey* Court provided several characteristics of a roadblock that minimize the risk of arbitrary intrusion. Those factors include: (a) whether cars traveling in both directions were stopped, unless traffic congestion requires permitting some motorists to pass through; (b) whether adequate safety precautions, such as warning approaching motorists of the roadblock and stopping cars in a safe and visible area, were taken; (c) whether uniformed officers with marked patrol cars with flashing emergency lights conducted the checkpoint; and (d) whether the public received advance publicity of the checkpoint, separate from, and in addition to, any warnings given approaching motorists. *Hicks*, 55 S.W.3d at 533. We find all four present in this case.

Our review of the record reveals that the checkpoint was conducted at a four-way intersection and all cars traveling from all directions were stopped. The Tennessee Highway Patrol implemented safety precautions such as advanced warning signs for approaching vehicles, and the location received pre-approval as a safe area with adequate space to pull cars out of the way of traffic if necessary. The troopers conducting the roadblock were all uniformed, wore safety vests, and carried flashlights. Because the lighting at the site was not sufficient, spotlights were brought to the site and used to provide lighting to the roadway, in addition to, the illuminated headlights of the marked cars that were present. Finally, Sergeant Wright provided advanced notice of the roadblock to the public through local newspaper and media outlets.

As to the limitation of officer discretion at the checkpoint, the record reveals that both the location and the establishment of the road block had to be approved by two superior officers. Sergeant Wright testified that after a trooper identified an area for a potential

checkpoint, Sergeant Wright visited the site with the trooper who had identified the site as a potential location for a driver's license checkpoint. Sergeant Wright then toured the site with a lieutenant who also approved the site. After the lieutenant approved the site, the paperwork was sent to the captain for final approval. This procedure demonstrates administrative oversight that limits officer discretion.

Factors regarding safety of the public were also considered during this process. Once Sergeant Wright obtained approval, he then requested approval for the roadblock to be held on August 29, 2009. This request was also approved by both a lieutenant and a captain. The troopers who operated the vehicle check point were instructed to cover all four points of the intersection and stop all vehicles from all directions, which limited officer discretion in determining which vehicles to stop.

Accordingly, we conclude that the evidence does not preponderate against the trial court's denial of the Defendant's motion to suppress. Thus, the Defendant is not entitled to relief as to this issue.

## B. Evidence in Violation of Rule 404(b)

The Defendant asserts that the trial court erred when it allowed testimony that the Defendant had violated the light law by failing to have lights illuminated on the back of the vehicle he was towing. The State responds that the Defendant has waived this issue because he failed to raise it in his motion for new trial. Alternatively, the State asserts that the trial court did not commit plain error because the testimony would not have changed the outcome of the trial.

According to Tennessee Rule 3(e) of Appellate Procedure, "no issue presented for review shall be predicated upon error . . . admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." The Advisory Commission Comments add that "relief need not be granted to a party who fails to take whatever action is reasonably available to prevent or nullify the harmful effect of error."

Due to the Defendant's failure to raise this issue in his motion for new trial, the Defendant has waived the issue of whether the trial court erred in allowing testimony that the Defendant was illegally towing a vehicle. We decline plain error review of this issue because it does not rise to the level of affecting a substantial right which would necessitate review in order to do substantial justice, and the alleged error would not have affected the outcome of the trial. *See* Tenn. R. Crim. P. 52(b); *Smith*, 24 S.W.3d at 283. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE