IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 15, 2015

## STATE OF TENNESSEE v. KENNETH DWAYNE MITCHELL

**Appeal from the Criminal Court for Sullivan County**
**No. S61084      R. Jerry Beck, Judge**

_____

**No. E2014-02542-CCA-R3-CD – Filed December 3, 2015**

_____

Following his arrest at a sobriety checkpoint on October 7, 2011, the Defendant, Kenneth Dwayne Mitchell, was indicted for driving under the influence ("DUI"), possession of drug paraphernalia, and driving with a blood alcohol content ("BAC") of .08% or greater ("DUI per se"). See Tenn. Code Ann. §§ 39-17-425 & 39-17-425. Following a jury trial, the Defendant was convicted of DUI per se and acquitted of the remaining charges. In this appeal as of right, the Defendant contends that the trial court erred in denying his motion to suppress, arguing that his seizure at the sobriety checkpoint was unreasonable because adequate notice of the roadblock was not provided. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Stephen M. Wallace, District Public Defender; and Terry L. Jordan, Assistant District Public Defender, for the appellant, Kenneth Dwayne Mitchell.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Barry Staubus, District Attorney General; and Benjamin Rowe, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

The Defendant's arrest followed his stop at a sobriety checkpoint conducted by the Tennessee Highway Patrol ("THP") in Sullivan County. Prior to trial, the Defendant filed a motion to suppress evidence obtained as a result of his seizure at the checkpoint, arguing that his seizure failed to pass constitutional muster. In particular, the Defendant

asserted that advance publicity of the roadblock was provided on October 2, 2011, five days prior to the roadblock, which took place on October 7, 2011. According to the Defendant, this violated the THP's General Order 410-1, which provides guidelines for the establishment and administration of sobriety checkpoints and requires that the THP notify the news media no less than two weeks prior to the roadblock.

At the hearing on the motion to suppress, Major Danny Talley of the THP testified that he was a district captain on October 7, 2011, and that one of his duties in that role was to approve requests for checkpoint locations. According to Major Talley, the process for site selection is dictated by Order 410-1, which directs that troop lieutenants utilize "data-driven analysis" to select the best sites for checkpoints. He said that relevant data points are "high crash areas, previous DUIs in that particular area, . . . and hazardous moving violations."

In this case, THP Lieutenant Derrick Watson submitted the request for the sobriety checkpoint. Major Talley testified that Lt. Watson visited the site—U.S. 11E at Allison Road—and filled out a form called a "site selection/removal checklist," which lists qualifying criteria for checkpoints, and Major Talley approved the checkpoint request. Major Talley did not actively participate in, and was not physically present at, the roadblock.

THP Sergeant Jeff Anderson testified that he was responsible for the THP's administrative and logistical work within a thirteen-county district. Sgt. Anderson identified an e-mail sent on September 21, 2011, from THP Lieutenant Stephen Street to the Kingsport Times-News ("Times-News") notifying the newspaper of the sobriety checkpoint. Sgt. Anderson also identified another email providing notice of the checkpoint which had been sent to the Bristol Herald Courier ("Herald Courier") on the same date. In particular, the press release stated that "[t]he Tennessee Highway Patrol will be conducting sobriety roadside safety checkpoints during the week of October 2, 2011, on U.S. 11E at Allison Road in Sullivan County." Sgt. Anderson produced a copy of an article from the Times-News, published on Sunday October 2, 2011, which announced the upcoming roadblock. In particular, the paper printed that the THP would "conduct roadside safety checkpoints on U.S. Highway 11-E at Allison Road in Sullivan County through Oct[ober] 8." There was no proof introduced that the Herald Courier ran a notice of the checkpoint.

Sgt. Anderson testified that it was departmental policy to send out a notice to the news media at least two weeks prior to the date of the roadblock. However, Sgt. Anderson said that the THP had no control over whether the media outlets would actually

publish notice of a particular roadblock. In this particular case, the newspapers were notified seventeen days prior to the date of the sobriety checkpoint.

THP Sergeant Paul Mooneyham, Jr., testified that he was the "site supervisor" for the roadblock and that one of his responsibilities in that role was to provide notification of the sobriety checkpoints to the media. Sgt. Mooneyham testified that the protocol for notifying the media included his sending a media notification form to the THP's administrative personnel, who then forwarded the notice to "the immediate outlets." The form must be submitted to headquarters no later than thirty days prior to the roadblock. He testified that this protocol was followed in the instant case. Sgt. Mooneyham testified that if the sobriety checkpoint had not been properly publicized pursuant to Order 410-1, it would not have been conducted.

Prior to the roadblock, Sgt. Mooneyham "briefed" the participating officers regarding particular policies pertinent to a sobriety checkpoint. Sgt. Mooneyham testified that he was in charge of "safety" at the sobriety checkpoint and that he was present at the time of the roadblock, although his job was supervisory only, and he did not "actively participate in the stoppage of cars." Sgt. Mooneyham explained that large, orange signs reading "sobriety checkpoint ahead" were placed about one-hundred feet from the checkpoint site and that traffic cones were set out to control the flow of traffic. Sgt. Mooneyham testified that, at the time that a request for a roadblock is submitted, a request can be made to stop all vehicles, every fifth vehicle, or some other pattern. In this case, Sgt. Mooneyham requested and received approval to stop every vehicle.

Sgt. Mooneyham described the checkpoint location as a four-lane highway—two lanes going north and two lanes going south—with a separate, continuous turn lane in the middle. Additionally, there were shoulders on each side of the road, which were approximately the width of a driving lane. He agreed that the roadway was "safe and visible." Sgt. Mooneyham testified that around thirty-eight officers were present at the sobriety checkpoint. In addition to the activation of blue lights on patrol cars, Sgt. Mooneyham utilized spotlights and "takedown" lights in order to ensure visibility at the site.

Sgt. Mooneyham testified that he filled out the media notification form, which he then delivered to administrative Sgt. Jeff Anderson, who in turn submitted it to the media outlets—in this case, the Times-News and Herald Courier. The Times-News printed a notification announcing the sobriety checkpoint on Sunday, October 2, 2011.

In total, 600 cars passed through the checkpoint; twenty-seven citations were issued; and three misdemeanor arrests were made—including one DUI.

The trial court subsequently denied the Defendant's motion to suppress. The court said that it was "satisfied beyond any doubt" that the THP sent notification to the Times-News and the Herald Courier, although the Herald Courier chose not to print it. The court noted that these two newspapers were the "only two major circulation newspapers in Sullivan County" and that they were "highly competitive." The court discussed the location of the roadblock relative to the location of the nearest cities, Bristol and Kingsport. However, the court noted that there was no evidence introduced regarding the circulation of either paper or "which areas they would serve the most." Nevertheless, the court ultimately concluded that the THP "did what they could do in regards to notification," having sent notification to each "general circulation newspaper[] in Sullivan County."

Subsequently, the case proceeded to trial, where THP Trooper Julian Robinson testified that he participated in the sobriety checkpoint located at U.S. 11E and Allison Road on October 7, 2011. Trooper Robinson testified that at around 11:30 p.m., a white Jeep came through the roadblock. Trooper Robinson spoke with the driver, whom he identified as the Defendant, and he smelled the "odor of an intoxicant [sic] substance coming from his person." The Defendant was instructed to pull his vehicle over to the side of the road so that the trooper could further investigate "the possible impairment." After performing poorly on several field sobriety tests, Trooper Robinson placed the Defendant under arrest and "invoked the Tennessee implied consent law." The Defendant agreed to submit to a blood test to determine the level of alcohol in his system, and he was taken to the hospital for a blood draw.

Following his arrest, the Defendant's vehicle was subjected to an inventory search, which revealed a metal pipe located in the center console. According to Trooper Robinson, the pipe had an odor of marijuana. However, the pipe was never tested for the presence of marijuana or other drugs.

Melanie Carlisle testified that she was a "Special Agent-Forensic Scientist in [the] Alcohol and Toxicology Unit" with the Tennessee Bureau of Investigation. In this position, Agent Carlisle's duties included analyzing blood samples for the presence of alcohol "or any other volatile." Agent Carlisle testified that she conducted an alcohol analysis on the Defendant's blood and that his BAC was .10%.

The Defendant testified that prior to his arrest in October 2011, he had been treated for brain cancer and that surgical excision of his tumor had resulted in losses of his balance and coordination and led him to have seizure-like symptoms[1] in stressful

---

[1] According to the Defendant, he suffered from "faux seizures" that caused him to exhibit "phantom symptoms" similar to those suffered by an individual having an actual seizure.

situations, making it "hard to function." He recalled that on October 7, 2011, he had attended a barbeque hosted by some of his friends to celebrate the completion of his chemotherapy treatments. The Defendant admitted that he drank two beers at the party and that he had not consumed any food that day. He attributed his poor performance on the field sobriety tests to his medical limitations and claimed that the flashing lights at the checkpoint caused him to experience seizure-like symptoms. The Defendant admitted that, at the time of his arrest, he knew that consuming alcohol was likely to exacerbate his preexisting difficulties with coordination and cognitive function.

Upon this evidence, the jury convicted the Defendant of DUI per se and acquitted him of the charges of DUI and possession of drug paraphernalia. This timely appeal followed.

## ANALYSIS

The Defendant claims that notice of the sobriety checkpoint was defective in three respects: (1) the notice was not provided far enough in advance of the roadblock; (2) the notice was only provided to part of the county because one of the county's two general circulation newspapers chose not to print the notice; and (3) the notice did not provide an exact date for the roadblock. The Defendant also briefly asserts that the roadblock was unreasonable because the State failed to prove that the checkpoint was an effective tool for protecting against a public danger. However, this issue was raised for the first time on appeal and is, accordingly, waived. See Tenn. R. App. P. 36(a). The State responds that the notice provided was adequate in all respects.

### I. Standard of Review

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000). Likewise, questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial court, and this court will not reverse the trial court's factual findings unless the evidence preponderates against them. Id. (citing State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). Both proof presented at the suppression hearing and proof presented at trial may be considered by an appellate court in deciding the propriety of the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998). The evidence is to be viewed in the light most favorable to the prevailing party on a motion to suppress with all reasonable and legitimate inferences that may be drawn by the evidence. State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000). However, our review of the application of the law to the facts is de novo. State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998).

## II. Constitutionality of Sobriety Checkpoint

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" Keith, 978 S.W.2d at 865 (quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967)). A police officer's stop of an automobile constitutes a seizure under both the federal and state constitutions. Delaware v. Prouse, 440 U.S. 648, 653 (1979); State v. Westbrooks, 594 S.W.2d 741, 743 (Tenn. Crim. App. 1979).

In accordance with these principles, the general rule is that any warrantless search or seizure is presumed to be unreasonable and requires the State to prove by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998). Our supreme court has "depart[ed] from these fundamental constitutional principles" in the case of a roadblock seizure made for the purpose of identifying intoxicated drivers. State v. Downey, 945 S.W.2d 102, 104 (Tenn. 1997). In Downey, our supreme court held that at a sobriety checkpoint, officers may "stop and question persons whose conduct is ordinary, innocent, and free from suspicion." Id.

However, a seizure at a sobriety checkpoint is reasonable in accordance with the Tennessee Constitution only if "it is established and operated in accordance with predetermined operational guidelines and supervisory authority that minimize the risk of arbitrary intrusion on individuals and limit the discretion of law enforcement officers at the scene." 945 S.W.2d at 104; see also Brown v. Texas, 443 U.S. 47, 50-51 (1979) (discussing, generally, the reasonableness of seizures that are less intrusive than an arrest and stating that such seizures "must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers"). To this end, there are two absolute prerequisites that the State must establish before a roadblock will be found constitutional: (1) the decision to set up the roadblock in the first instance must not have been made by the officer or officers actually establishing the roadblock; and (2) the officers on the scene must not have discretion to select the procedures to be used in operating the roadblock. State v. Hayes, 188 S.W.3d 505, 516 (Tenn. 2006) (citing State v. Hicks, 55 S.W.3d 515, 533 (Tenn. 2011)); see also State v. Charles H. Vires, Jr., No. M2010-01004-CCA-R3-CD, 2011 WL 4447014, at *3 (Tenn. Crim. App. Sept. 26, 2011) (noting that "[t]he absence of either of these mandatory factors renders a roadblock unconstitutional per se").

Furthermore, four additional factors minimize the risk of arbitrary intrusion during the administration of a roadblock:

> (1) stopping all cars traveling in both directions, unless congested traffic requires permitting motorists to pass through;
>
> (2) taking adequate safety precautions, such as warning approaching motorists of the roadblock and stopping cars only in a safe and visible area;
>
> (3) conducting the roadblock with uniformed officers and marked patrol cars with flashing emergency lights; and
>
> (4) providing advanced publicity of the roadblock to the public at large, separate from, and in addition to, any notice warnings given to approaching motorists.

Vires, 2011 WL 4447014, at *3 (citing Hicks, 55 S.W.3d at 533); see also Downey, 945 S.W.2d at 110-12. "[T]he absence of any one of these factors does not necessarily invalidate a roadblock"; however, "they each weigh heavily in determining the overall reasonableness of the checkpoint." Id. Furthermore, "the overriding question is whether the roadblock was established and operated in a constitutionally reasonable manner that minimized the intrusion on individuals and limited the discretion afforded to officers at the scene." Downey, 945 S.W.2d at 110.

In this appeal, the Defendant challenges only the sufficiency of the notice provided prior to the roadblock. In reviewing this issue, we note that "[a]lthough compliance with the requirements of Downey and Hicks, not General Order 410-1, governs the constitutionality of the roadblock, the failure of the notice to comply with General Order 410-1 is evidence of a lack of administrative or supervisory decision making." Vires, 2011 WL 4447014, at *4 (citing Downey, 945 S.W.2d at 111, n.8; Hicks, 55 S.W.3d at 535, n.11).

We agree with the trial court that notice of the sobriety checkpoint was in compliance with Order 410-1. To the extent that the Defendant complains that notice was not provided at least two weeks prior to the checkpoint, he misreads the notice requirement contained in Order 410-1. The Order does not require that notice of the roadblock is actually provided to the public no later than two weeks prior to the date of the roadblock. Rather, the THP is merely required to provide that information to the news media in accordance with that timeframe. Sgt. Anderson testified that notice was provided to local news outlets seventeen days prior to the date of the roadblock, in full

compliance with Order 410-1. Adherence to Order 410-in this respect bolsters the reasonableness of the roadblock.

Additionally, the Defendant has cited to no authority in support of his argument that "[n]otice[,] to be effective[,] must be available to all or most of the citizens of the area where the checkpoint is to be held." The trial court observed that the Times-News and Herald Courier were the only two general circulation papers in the county and that they were "highly competitive." However, the Defendant failed to introduce any evidence regarding the circulation pattern of either the Times-News or the Herald Courier within Sullivan County. Therefore, like the trial court, we are unable to determine the import, if any, of the Herald Courier's failure to publish notice.

Furthermore, the Defendant's argument that the THP's failure to provide a specific date for the roadblock undermines the deterrent effect of the notice is unpersuasive. Although one goal of the advanced publicity requirement is to deter those who might otherwise drive intoxicated, a panel of this court has previously found that where the notice provided listed a date range during which the sobriety checkpoint would be conducted rather than a specific date, the deterrent value might actually increase. See State v. Rick L. Muncie, No. M2008-02097-CCA-R3-CD, 2009 WL 3031269, at *9 (Tenn. Crim. App. Sept. 23, 2009). Again, the Defendant has pointed to no authority requiring that notice of the roadblock include a specific date, and this issue is without merit.

Finally, even had we concluded that the notification was deficient in this case, that would not per se lead to a determination that the sobriety checkpoint was unconstitutional. See Downey, 945 S.W.2d at 110; see also State v. Sherman Boddie, No. W2007-00685-CCA-R3-CD, 2007 WL 4322159, at *4 (Tenn. Crim. App. Dec. 11, 2007) (holding that roadblock was constitutionally reasonable where the State proved compliance with the mandatory Downey and Hicks factors as well as three of the four remaining factors). The Defendant does not allege that the roadblock was deficient in any other respect, and our review leads us to conclude that the State met its burden of proving that the roadblock complied with Downey and its progeny. Most importantly, the proof introduced at the suppression hearing supports a determination that the sobriety checkpoint in this case was conducted with appropriate supervisory authority and that individual officer discretion in the field was extremely limited. Therefore, we conclude that the sobriety checkpoint was constitutional, and we affirm the trial court's denial of the Defendant's motion to suppress.

## CONCLUSION

Based on the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE